Samuel WASHINGTON, Appellant,

v.

NAYLOR INDUSTRIAL SERVICES, INC., Appellee.

No. 01–94–00244–CV.

Court of Appeals of Texas, Houston [1st Dist.].

Feb. 23, 1995.

Jerald David Mize, Houston, for appellant.

Samuel E. Hooper, Eric R. Miller, Houston, for appellee.

Before OLIVER–PARROTT, ANDELL and COHEN, JJ.

## OPINION

COHEN, Justice.

The trial judge granted Naylor Industrial Services, Inc. a take-nothing summary judgment against appellant, Samuel Washington. We affirm.

Washington worked for Naylor from 1986 to 1991, and was subject to random drug testing. Naylor's drug testing policy stated that an employee passed if no drugs were detected by a Gas Chromatography/Mass Spectrometry (GC/MS) test.[1] No preliminary positive drug screening tests, called EMIT tests, were to be reported by the lab to Naylor. Lab results were to be in writing only, marked personal and confidential, and sent to the Naylor Vice–President of Administration. The Vice–President would then direct the lab to confirm any positive screens by further testing, usually GC/MS, before reporting any positive screen.

Washington was sent for his drug test on May 22, 1990. The next day the lab orally informed Mr. Swisher, Vice–President of Naylor, that Washington's EMIT screening was positive for cannabinoids. Prior to June 25, 1990, Swisher told two of Naylor's supervisors, Griffin and Aiton, that Washington had failed the screening test, that the confirmatory test was under way, and that they should not assign Washington hazardous work assignments. Aiton then told Mr. Kelly and Mr. Brown that Washington had failed his drug test. Kelly and Brown were managers supervising Washington's job assignment at the time.

Washington passed the confirming (GC/MS) test.

On June 25, 1990, Aiton apologized to Washington for telling Kelly and Brown that he failed the drug test. Washington was fired in 1991 for competing with Naylor for a contract, a totally unrelated matter. Washington swore he did not learn he had passed the confirmatory test until after June 26, 1991, the date he filed suit.

In his second amended original petition, Washington alleged slander in counts one through five,[2] negligent infliction of emotional distress in count six, and breach of contract in count seven. Naylor moved for summary judgment, asserting the affirmative defense of truth to all slander claims; the affirmative defenses of limitations and qualified privilege to Swisher's and Aiton's statements; that the "unknown Naylor employee" was not authorized to make any such statements as Naylor's agent; that no cause of action exists for negligent infliction of emotional distress; and that Naylor drug testing

1. Naylor's drug policy, a part of its "standard operating procedure procedures" provided in pertinent part:
 Once employed, all employees are subject to alcohol/drug screening at least annually on a random basis.
 All tests which are initially "negative" shall be deemed conclusive, and the employee shall not be subjected to further testing for the same incident, accident, suspicion, etc.
 All "positive" screens shall be confirmed by an independent and detailed chemical analysis. If such confirmation test results in a "negative" finding, the employee shall be conclusively deemed to have passed the screen. No positive screens are to be reported by any laboratory unless and until confirmed as above.

 For purposes of this policy, all confirmed "positive" screens (the presence of *any* detectable amount of a prohibited substance in the body), absent a licensed physician's written statement that such presence is both necessary and non-impairing to judgement, reflex, and performance, constitutes a "failure" of the screen. Employees failing, or refusing to submit to, a drug/alcohol screen shall be terminated....

2. Count 1 alleges that in 1990, Swisher told Chris Block; Count 2 alleges that in 1990, Swisher told Gerald Aiton; Count 3 alleges that in 1990, Aiton told Alan Kelly; Count 4 alleges that in 1990, Aiton told Lloyd Brown; Count 5 alleges that in 1991, an unknown Naylor employee told Ray Elizondo.

policies did not create an employment contract in an employment at-will relationship.

On September 30, 1993, the court granted to Naylor an interlocutory summary judgment on all counts, of Washington's second amended petition, but denied Naylor's "Motion to Strike Plaintiff's Third Amended Original Petition." The third petition resembled the second, but contained a new count six for intentional infliction of emotional distress.

The new count six was carried forward into Plaintiff's fourth amended original petition, which alleged:

Counts 1–5: Same slander per se counts as before;

Count 6: Intentional Infliction of Emotional Distress;

Count 7: Same Breach of Contract count as before;

Count 8: Defamation;

Count 9: Invasion of Privacy;

Count 10: Negligent Defamation;

Count 11: Grossly Negligent Defamation.

The trial judge granted Naylor's motion for summary judgment as to all counts of Washington's fourth amended original petition, and denied Naylor's motion to strike that petition.

### POINT OF ERROR ONE

In his first point of error, Washington asserts that the trial judge erred in granting Naylor's motion for summary judgment on his second amended original petition.[3]

■ When, as here, no grounds are stated for the court's ruling, the summary judgment will be affirmed if any theory advanced is meritorious. *Insurance Co. of North America v. Security Ins. Co.,* 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ).

**3.** When the final judgment was granted, Washington's live pleading was his fourth amended petition. However, we will review Washington's complaints about the interlocutory summary judgment because the second amended petition, which was then the live petition, was virtually

### Truth (Counts One to Four)

■ Naylor claims the statements were true when made, i.e., it is undisputed that Washington had a positive EMIT test. Washington claims that under Naylor's policy, see footnote 1 above, one cannot "fail" the EMIT test; one can only "pass" it because, under Naylor's policy, a negative EMIT result is deemed conclusive, but a positive EMIT result should not even be reported to Naylor by the laboratory until confirmed by further testing. Thus, Washington argues, the statements that he failed the test were false.

We agree with Naylor. Regardless of how "failing" the drug test is defined, the objective truth is that Washington tested positive on the EMIT test. The laboratory's reporting of that fact may have breached Naylor's policy of confidentiality, but its report was not false, nor were the statements by Swisher and Aiton.

The Supreme Court has recently and unanimously held that a "literally true" statement is a "complete defense" to slander. *Randall's Food Market, Inc., v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). The statements here were "literally true."

### Qualified Privilege (Counts One to Four)

■ An employer's accusations are privileged when made to a person having a business interest in the information. *Randall's,* at 646. Swisher and Aiton plainly had an interest in informing Washington's supervisors about his preliminary drug screen. Washington asserts that because Swisher and Aiton notified Washington's supervisors in violation of Naylor's own drug policy, a fact issue exists about whether the statements were made with malice. This argument assumes, of course, that the statements were false. We have held that the statements were true. Therefore, no privilege is necessary.

identical to the fourth petition and because both briefs present the arguments framed in terms of the second amended petition. The differences in the second and fourth petitions are discussed later.

■ Naylor presented evidence of its good faith, specifically that every communication made by Swisher and Aiton was prompted by the belief Washington tested positive on the preliminary screen and the innocent motive of informing supervisors so that Washington could be scheduled away from hazardous jobs. Washington presented no evidence to dispute that Naylor's executives acted without malice. To show malice, a plaintiff must show "that the defendant in fact entertained serious doubts as to the truth of his publication." *Hagler v. Proctor and Gamble Manufacturing Co.*, 884 S.W.2d 771, 772 (1994). There is no such evidence. Therefore, the judgment in the slander cases (counts 1–4) is also proper on the basis of qualified privilege.

We hold the trial judge did not err in granting Naylor summary judgment on counts one through four of Washington's second amended original petition.

### Count Five (Slander Per Se by "Unknown Naylor Employee")

In count five, Washington alleged that an "unknown Naylor employee" told Elizondo that Washington had failed his drug test.

■ Truth of an alleged defamatory statement is a complete defense to a slander action. It is undisputed that Washington tested positive on the EMIT test for drugs. Even though Naylor's policy provided for termination of only those employees who had a confirmed positive result, that cannot change the fact that independently of Naylor, as a scientific matter, .the lab determined that Washington failed the preliminary test.

Because Naylor conclusively proved that its statements were true, summary judgment was proper on count five of Washington's second amended original petition.

### Count Seven [4] (Breach of Contract)

Washington had no employment contract with Naylor. He was employed at will. Naylor's internal policies do not constitute a contract with appellant. *Vallone v. AGIP*

*Petroleum Co.*, 705 S.W.2d 757, 759 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Moreover, Naylor was free to change its policy, abandon it, or make exceptions to it as it wished. For example, Naylor could have fired appellant, an employee at will, for the positive EMIT result, and he would have had no recourse, despite the policy. *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723 (Tex.1990). If Naylor could have done that, it was certainly free to act as it did.

We overrule Washington's first point of error.

### POINT OF ERROR TWO

In his second point of error, Washington asserts that the trial judge erred in granting Naylor's motion to strike his Fourth Amended Original Petition.

The record shows that the trial judge denied Naylor's motion to strike that petition. Consequently, we overrule Washington's second point of error.

### POINT OF ERROR THREE

In point of error three, Washington asserts that the trial judge erred in granting Naylor's motion for summary judgment on his fourth amended original petition.

### Counts One through Five (Slander Per Se) & Seven (Breach of Contract)

These counts were the same as in the second amended petition. Therefore, the complaints are without merit for reasons stated above.

### Count Six (Intentional Infliction of Emotional Distress)

■ To recover for intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was "extreme and outrageous," and (3) the defendant caused the plaintiff severe emotional distress. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). Outrageous conduct is that which goes beyond all possible bounds of

4. Washington withdrew count 6, his claim of negligent infliction of emotional distress, before the submission date.

decency and is regarded as atrocious and utterly intolerable in a civilized community. *Id.* at 734. Whether Naylor's acts were "outrageous" is a question of law. *Id.*

 The evidence shows conclusively that Naylor's communications were prompted by the belief Washington tested positive on the preliminary screen and by the innocent motive of informing supervisors so that Washington could be scheduled away from hazardous jobs. As a matter of law, Naylor's conduct was not outrageous. *See Randall's*, at 645–46.

The trial judge did not err in granting Naylor's motion for summary judgment on count six of Washington's fourth amended petition.

### Count Eight (Defamation)

Count eight of Washington's fourth amended petition is the same as count five of his second amended petition and has been disposed of by our ruling on point of error one.

The trial judge did not err in granting Naylor's motion for summary judgment on count eight of Washington's fourth amended petition.

### Counts 10 [5] & 11 (Negligent and Grossly Negligent Defamation)

In counts 10 and 11 Washington attempts to cast its count five ("unknown Naylor employee"—slander per se) from its second amended original petition as a new claim for negligent and grossly negligent defamation. We overrule these contentions for reasons stated above (count 8).

The trial judge did not err in granting Naylor's motion for summary judgment on counts 10 and 11 of Washington's fourth amended petition.

We overrule Washington's third point of error.

We affirm the judgment.

5. In his response to Naylor's motion for summary judgment, Washington abandoned count nine.