Carl G. MILLER, Appellant,

v.

GALVESTON/HOUSTON DIOCESE, A.M. "Tony" Durso, Individually and in his Official Capacity as Principal of Mt. Carmel High School, and Eric May, Individually and in his Official Capacity as Assistant Principal of Mt. Carmel High School, Appellees.

No. 07–95–0051–CV.

Court of Appeals of Texas, Amarillo.

Dec. 13, 1995.

898

Watts & Associates, Laurence W. Watts, Carleton C. Casteel, Houston, for appellant.

Feldman & Associates, David M. Feldman, Myra C. Schexnayder, Law Offices of Bradford W. Irelan, Bradford W. Irelan, Houston, for appellees.

Before DODSON, BOYD and QUINN, JJ.

QUINN, Justice.

Carl Miller (Miller) appealed from a final summary judgment denying him recovery. Originally suing the Diocese of ·Galveston/Houston and Anthony M. Durso (collectively referred to as the Diocese) upon claims of breached contract, wrongful discharge, and intentional infliction of emotional distress, he abandoned, on appeal, the first two causes, and, in one point of error, attacked the court's dismissal of his claim for infliction of distress. In particular, he contended that material issues of fact existed regarding the elements of outrageous conduct and severe distress. We overrule the point and affirm.

### Standard of Review

For a summary judgment to be granted, the movant must negate the pres-

ence of all material issues of fact and establish his right to judgment as a matter of law. *Tex.R.Civ.P.* 166a(c). A defendant may do this by irrebuttably proving the absence of one or more essential elements of his opponent's cause of action. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). In determining whether the defendant carried his burden, we construe the evidence, and reasonable inferences therefrom, in a manner most favorable to the plaintiff. *Id.* at 644.

■ Next, the movant requesting judgment is free to assert as many grounds therefor as he chooses. Should he raise several and the court fail to state upon which it relied in granting relief, an additional obstacle confronts the non-movant. It falls upon the latter, on appeal, to address each ground asserted and establish why it was deficient to support judgment. *Lee v. Levi Strauss & Co.,* 897 S.W.2d 501, 504 (Tex.App.—El Paso 1995, no writ). Failing to do this entitles the reviewing court to affirm on any unaddressed ground.

Through its motion for summary judgment, the Diocese negated the elements of Miller's infliction claim which pertained to extreme and outrageous conduct and severe distress. Furthermore, the trial court did not specify on which element it relied; therefore, Miller must prove that fact issues existed with regard to both elements to secure reversal.

### Extreme and Outrageous Conduct

■ Whether conduct is sufficiently outrageous for purposes of recovery for the intentional infliction of emotional distress is a question of law. *Washington v. Naylor Indus. Serv., Inc.,* 893 S.W.2d 309, 312–13 (Tex. App.—Houston [1st Dist.] 1995, no writ); *see Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993) (stating that the court determine, "in the first instance," whether the conduct may reasonably be regarded as so extreme and outrageous as to permit recovery). In exercising our duty to resolve that, we ask whether it exceeded all possible bounds of decency so as to be atrocious and utterly

intolerable in a civilized community, for that is the standard which the complainant must meet. *Id.; Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). Additionally, complaints of activity arising in the employment setting must consist of more than mere employment disputes to surpass this threshold. *MacArthur v. University of Tex. Health Center Tyler,* 45 F.3d 890, 898 (5th Cir.1995) (applying Texas law). Thus, petty bickering, insults, and indignities culminating in discharge lack the requisite outrageousness. *Id.* Similarly, the act of discharge, in and of itself, falls short even if coupled with bickering, insults, and embarrassments. *Wornick Co. v. Casas,* 856 S.W.2d at 735; *Sebesta v. Kent Electronics Corp.,* 886 S.W.2d 459, 464 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (refusing to assess liability though the employee was made to undergo an "exit parade" during the busiest time of the day). Each of the foregoing acts may be tasteless, but none are tortious.

### Application

#### a. Facts

The dispute at bar arises from employer/employee discontent. Various faculty of Mt. Carmel High, a private parochial school, grew unhappy with various administrators and their management techniques. The dissatisfied group, which included Miller, felt that they had "a better concept of the way a Catholic high school should be run" and began to make their opinion known within the school hierarchy. To address the situation, an administrator scheduled a meeting wherein those concerned could openly and honestly "speak together with a facilitator." Miller attended, and while engaging in frank discussion, stated that he could not, with clear conscience, return to Mount Carmel for the 1993–94 school year "under the current administration."

Shortly thereafter, Miller received a letter from the high school's principal, Anthony Durso. The latter had attended the conference and overheard Miller's statement. Purportedly interpreting the comment as an offer to resign, Durso "formally accept[ed]" it via the letter. Needless to say, Miller disa-

greed with Durso's interpretation and apparently considered the letter indication that the school would not extend him a contract for the following year. Objection was also made to Durso's use of the previous meeting and utterances therein adversely, given that Miller and his colleagues were "falsely" induced to speak freely.

Several weeks later, Durso sent Miller another letter acknowledging the dispute about whether Miller actually resigned. To settle that issue, the principal simply informed his teacher "that I do not plan to renew your contract for the 1993–94 school year." He so acted under the auspices of "item # 9" of Miller's employment contract, which provision read:

> This contract shall expire upon its term [sic] and neither party shall have any obligation to the other to renew this agreement.

The school "term" referred to ran from August 1, 1992 to July 31, 1993.

### b. Contentions

Miller did not argue that the fact of discharge, itself, was outrageous. Rather, he protested the manner in which it was carried-out. Specifically, 1) "stag[ing] a workshop devoted to candor and 'healing,' then to turn around and use his solicited observation to effect his termination," 2) practicing "mental gamesmanship," and 3) resorting to the terms of Miller's employment contract were outrageous. We disagree.

### c. Result

In *Wornick*, the employee was unexpectedly fired despite favorable job evaluations, being mislead to believe that she was simply on a leave of absence, and being escorted from the premises by security guards. Though one could reasonably conclude that the foregoing would tend to humiliate, none of the acts, according to the Texas Supreme Court, exceeded the bounds of decency. *Wornick Co. v. Casas*, 856 S.W.2d at 735. In *Sebesta*, the court refused to hold the employer liable for infliction of distress even though it yelled at the employee for performing jury duty, discharged the individual in violation of the Juror Reemployment Act, mischaracterized the firing as a simple resignation, violated its own internal policies, and arranged for the ex-employee to leave via an "exit parade" during the busiest time of the day. *Sebesta v. Kent Electronics, Corp.*, 886 S.W.2d at 463–64. In *MacArthur*, the employer made unfounded accusations against the employee, threatened to charge her with scientific misconduct, and exercised substantial control over the committee which eventually suspended her work medical privileges all without incurring liability. *MacArthur v. University of Texas Health Center Tyler*, 45 F.3d at 898–99. Moreover, neither falsely accusing an employee of theft, *Diamond Shamrock Refining & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex.1992), nor placing rattle snake rattlers in the employee's desk, subjecting her to derogatory name calling and ostracism, defacing her pictures, or refusing to discipline her tormentors are sufficiently egregious. *Horton v. Montgomery Ward & Co., Inc.*, 827 S.W.2d 361, 367–70 (Tex.App.—San Antonio 1992, writ denied).

■ Here, we have acts comparable to those extant in the above mentioned cases. Each illustrated little more than petty bickering, insults, and indignities. Indeed, inducing one to speak openly then terminating his employment for that said may be an unacceptable management practice. The effect most likely would be to chill the speech of other employees. Yet, that is not tantamount to "framing" the individual for a crime such as in *Dean v. Ford Motor Credit Co.*, 885 F.2d 300 (5th Cir.1989). And, whatever ramifications the act may have on employee morale or trust is a problem for management to remedy, not the State or its judiciary. Similarly, engaging in word games about whether one resigned or was fired smacks of tedious squabble within the bailiwick of management, not the courts. *See Sebesta v. Kent Electronics, Corp.*, 886 S.W.2d at 463–64 (wherein the court refused to assign liability to an employer's misrepresentation that an employee resigned when he in fact was fired).

Nor can we hang the moniker of uncivilized and atrocious behavior upon an employer's eventual reliance on its contractual right. *Wornick Co. v. Casas*, 856 S.W.2d at 734–35 (insulating the employer from liability for acts performed within its legal rights). Resorting to such civilized and lawful avenues

to curtail further debate is exactly what the law condones.

In sum, "[t]ermination of an employee is never pleasant." *Id.* at 736. But, private employers must be accorded leeway to manage as they see fit. Their practices may be objectionable but that alone does not render them condemnable under the guise of intentional infliction of emotional distress. Though given the opportunity, other employers may have addressed the employee/management problem at bar differently, the conduct pursued by the Diocese and Durso was, as a matter of law, not atrocious.

The trial court having correctly found the element of outrageous conduct missing, we must affirm the summary judgment rendered below. Given this, we need not address whether Miller presented sufficient evidence to create an issue of fact regarding the presence of severe emotional distress.