**Mary Francis PRUETT and Patrick Daniel Pruett, Appellants,**

v.

**CITY OF AMARILLO, Texas, Appellee.**

No. 07-96-0319-CV.

Court of Appeals of Texas, Amarillo.

June 20, 1997.

Rehearing Overruled July 21, 1997.

Hoffman, Sheffield & Sauseda, Tim Hoffman, Amarillo, for appellants.

City Attorney, Merril E. Nunn, Claud H. Drinnen, Amarillo, for Appellee.

Before BOYD, C.J., and QUINN, J., and REYNOLDS, Senior Justice.*

QUINN, Justice.

Mary Francis Pruett and Patrick Daniel Pruett (the Pruetts) appeal from a final summary judgment denying them recovery against the City of Amarillo (Amarillo or the City). Through one point of error, they contend that the trial court erred in granting Amarillo's motion for summary judgment because 1) they had alleged an exception to sovereign immunity, 2) an affirmative defense was not established as a matter of law, and 3) the elements of negligence were not

---

*· Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex.

Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1997).

conclusively negated. We affirm in part and reverse in part.

## Background

The Pruetts sued Amarillo for negligence. The claim arose from an Amarillo police officer's attempt to apprehend an individual, William Dean Wesson (Wesson), suspected of driving while intoxicated.[1] While pursuing the suspect, the officer allegedly drove his squad car in a negligent manner which proximately caused the Pruetts to suffer injury. That is, his mode of driving caused Wesson's vehicle to collide with a car driven by Mary Pruett (Mary), according to the Pruetts. Similarly, Amarillo was also responsible for the injuries since it 1) failed to institute safe pursuit procedures, 2) failed to adequately instruct its employees on how to safely pursue another, and 3) authorized the pursuit of an individual without reasonable justification, they continued.

Once issue was joined, Amarillo moved for summary judgment. It was allegedly entitled to same because of 1) the City's sovereign immunity, 2) the absence of any duty owed by it to the Pruetts, and 3) the absence of proximate causation. The trial court agreed and granted the motion. However, the judgment subsequently entered did not specify upon which ground it relied.

## Standard of Review

For a summary judgment to be granted, the movant must negate the presence of all material issues of fact and establish his right to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Miller v. Galveston/Houston Diocese*, 911 S.W.2d 897, 898–99 (Tex.App.— Amarillo 1995, no writ). A defendant may do this by conclusively 1) negating one or more essential elements of his opponent's cause of action or 2) proving each element of an affirmative defense. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.

1995). Furthermore, in determining whether the defendant carried this burden, we construe the evidence, and reasonable inferences therefrom, in a manner most favorable to the plaintiff. *Id.* at 644; *Miller v. Galveston/Houston Diocese*, 911 S.W.2d at 899.

■ Next, the movant requesting judgment is free to assert as many grounds therefor as he chooses. Should he raise several and the court fail to state upon which it relied in granting relief, an additional obstacle confronts the non-movant. It falls upon the latter, on appeal, to address each ground asserted and establish why it was deficient to support judgment. *Miller v. Galveston/Houston Diocese*, 911 S.W.2d at 899; *Lee v. Levi Strauss & Co.*, 897 S.W.2d 501, 504 (Tex.App.—El Paso 1995, no writ). Moreover, failing to do this entitles the reviewing court to affirm on any unaddressed ground. *Miller v. Galveston/Houston,* 911 S.W.2d at 899.

## Application of Standard

At bar, recovery was sought against Amarillo through two avenues. The first involved imputation of liability via the doctrine of respondeat superior; that is, the Pruetts endeavored to impute the officer's purported negligence to Amarillo, his employer. The second entailed liability arising from the City's own supposed misfeasance in 1) neglecting to institute various procedures and instruct its policemen regarding those procedures and 2) authorizing pursuits without reasonable justification. As previously mentioned, Amarillo attempted to halt progress down the first avenue by asserting that an exception to its sovereign immunity had not been pled, the police officer was qualifiedly immune from liability, and negligence could not be established. Concerning the second avenue, it tried to defeat recovery via §§ 101.055(3) and 101.056(1) and (2) of the Texas Civil Practice and Remedies Code.[2]

---

1. The officer involved was not sued.

2. Section 101.055(3) of the Civil Practice and Remedies Code states that the Texas Tort Claims Act does not apply to claims arising "from the failure to provide or the method of providing police or fire protection." Subsections (1) and (2) of 101.056 state, respectively, that the act

does not apply to a claim based on 1) the failure of a governmental entity to perform an act that it is not required by law to perform or 2) the entity's decision not to perform an act or on its failure to make a decision if the law leaves the performance or nonperformance of the act to the discretion of the entity.

Moreover, no specific ground was alluded to by the trial court in granting the City's motion. Thus, we must test the viability of each ground asserted.

### a. Immunity Under §§ 101.055(3) and 101.056(1) & (2)

On appeal, the Pruetts said nothing about the application of §§ 101.055(3) and 101.056(1) and (2) of the Civil Practice and Remedies Code to their claims. Instead, their argument lay in illustrating why the police officer was not qualifiedly immune and why Amarillo failed to disprove negligence as a matter of law. Consequently, that portion of the summary judgment denying recovery upon the causes of action involving Amarillo's own supposed negligence (as opposed to the claims imputing the alleged negligence of others to Amarillo) must be affirmed.[3] *Miller v. Galveston/Houston, supra.*

### b. Negligence

#### 1. Breach of Duty

■ As to the contention that no duty was owed to the Pruetts, we disagree. The Texas Supreme Court recognized, in *City of Lancaster v. Chambers,* 883 S.W.2d 650 (Tex. 1994), that "authorized drivers of emergency vehicles [such as police officers] have 'the duty to drive with due regard for the safety of *all persons.*'" *Id.* at 653; *Tex. Transp. Code Ann.* § 546.005 (Vernon Pamph.1997) (emphasis added). The record evidence at bar indicated that the officer was not only investigating a complaint about a suspect driving while intoxicated but also actively pursuing that suspect. Thus, reasonable minds could differ as to whether the policeman was operating his squad car in the midst of an emergency situation. This, coupled

with the fact that the Pruetts fell within the category of "all persons," created a material question of fact as to whether the officer owed them a duty, as per *Chambers,* to drive with due regard for their safety.[4]

■ That the Pruetts may not have expressly referenced § 546.005 of the Texas Transportation Code or its predecessor, art. 6701d, § 24(e) of the Texas Revised Civil Statutes, or accused the officer of reckless conduct matters not. Simply put, they were not grounds averred in the City's motion for summary judgment. So, we cannot consider them for the first time on appeal. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996).

Finally, our having concluded that Amarillo failed to negate, as a matter of law, all material facts regarding the existence of a duty towards the Pruetts, relieves us from considering its alternative allegation that it had no duty to prevent injury due to the criminal acts of another. Indeed, we do not even read the Pruetts' live pleading as suggesting that either the City or its police officer was negligent in failing to protect the Pruetts from the criminal acts of Wesson.

#### 2. Causation

■ As to the contention that the City is not liable because there is no evidence of causation, we again disagree. First, we reject the notion that causation was negated as a matter of law simply because Wesson could neither remember anything about the incident nor recall whether his erratic driving was influenced by the police officer's action. Indeed, Amarillo admits as "plausible" the inference that Wesson knew, at the time, that he was being pursued by the officer and

---

3. The entire judgment cannot be affirmed on this basis for one simple reason. Amarillo did not posit below that either section of the Texas Civil Practice and Remedies Code also barred the Pruetts' attempt at recovery under respondeat superior. In other words, the two provisions were invoked as a means of precluding liability only with regard to Amarillo's own negligence. So, we are prohibited from using them as a way to affirm the trial court's action *vis-a-vis* the allegations of vicarious liability. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex. 1996) (holding that a summary judgment cannot

be granted or affirmed on grounds not alleged in the motion).

4. We understand that whether a duty exists is a question of law. Yet, the existence of a duty is dependent upon the presence of a certain factual scenario triggering the duty. So, in saying that the evidence created a material question of fact regarding a duty owed to the Pruetts, we are simply saying that the record contains evidence permitting reasonable minds to differ as to the existence of factual scenario which would trigger the duty at issue.

drove as he did in effort to escape apprehension. This does not fulfill its burden on summary judgment to conclusively *disprove* all causative link between Mary's injuries and the officer's conduct.

Moreover, while Wesson may not remember why he drove as he did, evidence presented through other sources at least created a material issue of fact as to the matter. For instance, Mary attested that "at ... the same instant that [she] was hit by ... Wesson, [she] saw the lights of a police car right behind ... Wesson's vehicle." So too did she state that the police siren was operating and Wesson's car was traveling at a high rate of speed immediately before impact. Another witness attested that the "police car was within a few yards of the Camaro [of Wesson] and was traveling at a high rate of speed with its lights on" before Mary was hit. Furthermore, the police officer interpreted Wesson's actions as indicative of effort to escape; that is, at one point he saw the suspect's "brake lights come on in a cloud of dust" and reported to "dispatch" that "I think I've got one *running from me.*" (Emphasis added). This interpretation of the situation was reiterated through an incident report filed of record; therein, another officer wrote that Wesson "was fleeing from a patrol car." In other words, the appellate transcript contains evidence not only indicating that the officer not only tried to garner but also succeeded in garnering Wesson's attention through siren, lights, speed, and proximity, and in response, Wesson ran from apprehension. That, in turn, created a material issue of fact concerning the nexus between the officer's action and that of Wesson.[5]

As to the proposition that Wesson's intoxication was the supervening and sole cause of the accident, we again disagree. As discussed in the immediately preceding paragraph, the evidence created a material question of fact as to the link between the officer's pursuit, Wesson's driving, and the collision with Mary. Thus, Amarillo failed to prove, as a matter of law, that something other than the officer's conduct proximately caused the accident. Furthermore, while we agree that many drunk drivers have accidents, Amarillo presented no evidence to support its suggestion that every drunk driver will have an accident each time he drives while drunk. So, we cannot hold that the Pruetts' injuries "would have been sustained even if [the officer] had not pursued ... Wesson."

### c. Official/Qualified Immunity

■ As to the contention that Amarillo proved, as a matter of law, that the officer was qualifiedly immune from liability, we also disagree. Qualified or official immunity consists of three elements. That is, such immunity is available when the injury complained of arises from a government employee's 1) exercise of a discretionary act, 2) in good faith, 3) during the scope of his employment. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Here, the Pruetts conceded the first and third elements. So, the only question we must decide is whether Amarillo proved, as a matter of law, the element of good faith.

■ Next, good faith is shown through evidence illustrating that a reasonably prudent officer, under the same or similar circumstances, would have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit. *City of Lancaster v. Chambers,* 883 S.W.2d at 656. This does not mean that the officer must show it would have been unreasonable to take the opposite action, *e.g.,* stop the pursuit. *Id.* at 656–57. Nor is the officer obligated to prove that all reasonably prudent and similarly situated officers would have acted as he did. *Id.* He need only establish that his conduct was a reasonable choice given the circumstances confronting him and despite the availability of other reasonable choices.[6] *See id.* at 657

---

**5.** Because there was evidence independent of Wesson's own testimony which indicated that he was reacting to the pursuit, we find *Litton Indus. Prod., Inc. v. Gammage,* 668 S.W.2d 319 (Tex. 1984) (holding that when circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred) inapposite.

**6.** Incidentally, the requisite evidence can be presented either through an expert or the officer

n. 7 (comparing the standard to that applicable where a claim of abused discretion and stating that discretion is abused only when the actor could not have reasonably reached the decision it did); *Beatty v. Charles,* 936 S.W.2d 28, 31–32 (Tex.App.—San Antonio 1996, no writ) (holding one establishes good faith by proving that a reasonable officer in the same or similar circumstances *might* have responded to the emergency in the same fashion). Once this burden is met, it falls upon the plaintiff to show that *no* reasonable person in the officer's position (and given circumstances before him) could have thought the course taken was justified. *City of Lancaster v. Chambers,* 883 S.W.2d at 656–57.

▮▮▮ Here, the acts of the officer which the Pruetts deem negligent fall within two general categories. One concerned his *initial decision* to pursue Wesson, *e.g.,* his "[e]ngaging in a high speed pursuit of an individual without reasonable justification." And, the other encompassed the *manner* in which the pursuit was made, *e.g.,* his "[f]ailing to give adequate warning of the pursuit" or his "chasing a suspect . . . at an excessive rate of speed through a residential neighborhood." Yet, in attempting to prove good faith, Amarillo merely addressed the initial decision to pursue. Nowhere in its summary judgment motion did it expressly contend that the manner in which the pursuit was effectuated was also undertaken in good faith. This was probably so because it argued before us that:

1) [h]ow . . . pursuit is accomplished is clearly a matter of discretion and not an issue of good faith,

2) [g]ood faith is based on the necessity to apprehend the drunk driver . . . not on the *manner* of the pursuit, and

3) [a] fact issue as to the *means* [the officer] used in effectuating th[e] decision, [to pursue] . . . does not go to good faith. . . .

(Emphasis added). In other words, we are urged to hold that once an officer makes the decision to chase another in good faith then he can complete the chase as he pleases and himself. *Beatty v. Charles,* 936 S.W.2d 28, 31–32

without the guidance of reason. This we cannot do.

Other courts have refused to grant summary judgment because factual disputes existed regarding the manner in which a discretionary act was performed. *E.g., Beatty v. Charles, supra* (dispute as to whether the emergency lights and siren were in use as the officer pursued a suspect); *Petta v. Rivera,* 923 S.W.2d 678, 685–86 (Tex.App.—Corpus Christi 1996, writ denied) (dispute as to whether an officer should have used deadly force in effectuating arrest). Thus, precedent reveals that the manner in which an act is performed also factors into the good faith equation.

Furthermore, our conclusion that the way in which an act is done must also be in good faith and have basis in common sense and reason. For example, an officer who personally witnessed a drunk driver hit a group of children and then flee would most likely be exercising good faith in deciding to pursue the suspect and prevent others from being hurt. But, what if the officer decided to himself run-over the children to effectuate the arrest, could he do that without thinking, in any way, of the other choices available or the consequences of his conduct? If one were to follow the City's argument, the answer would be yes. But, the suspect having injured the children and given the officer reasonable basis to give chase does not *ipso facto* relieve the officer of his obligation to assess the situation and determine how to avoid the children. Admittedly, this is an extreme scenario, but it nevertheless illustrates our point. At least two decisions are involved; whether to act and then how to act. Though arising from a common impetus, they are nonetheless distinct acts. And, since each may proximately cause injury to others, the actor's good faith with regard to each must be established.

Thus, when complainants allege, like the Pruetts here, that the officer was negligent in both deciding to pursue and in pursuing in the way he did, it is incumbent upon their opponent to conclusively prove that both acts were undertaken in good faith. Because Amarillo did not, it was not entitled to sum-

(Tex.App.—San Antonio 1996, no writ).

mary judgment on the defense of qualified immunity.[7]

Finally, we are mindful of the dire situation often confronting police officers, and nothing herein should be read as indication that the officer at bar acted improperly. We simply hold that Amarillo did not satisfy the burden imposed on it by Texas Rule of Civil Procedure 166(a).

Accordingly, we affirm summary judgment as to the claims encompassing Amarillo's purported negligence in failing to institute procedures involving safe pursuit, in failing to instruct its policemen regarding those procedures, and in authorizing pursuits without reasonable justification. In all other things, we reverse summary judgment and remand the cause for further proceedings.

---

7. Even had Amarillo argued that the manner in which the officer undertook the pursuit was reasonable, we would be hard-pressed to affirm summary judgment. This is so because material issues of fact existed as to the manner in which pursuit was undertaken. *E.g., Beatty v. Charles,* 936 S.W.2d at 31–32. While some evidence indicated that the officer was not in hot or high-speed pursuit, other evidence did. More importantly, it was the supposed fact of hot or high-speed pursuit which the Pruetts alleged, at least in part, was unreasonable under the circumstances. Nevertheless, factual disputes like this need not always pretermit summary judgment. It is conceivable that under particular circumstances, an officer could be acting reasonably irrespective of whether his pursuit was hot or not, was with sirens blaring or not, or was with emergency lights flashing or not. Much depends upon whether an expert or some other witness would so conclude. Thus, it could well be that the officer was acting in good faith under both factual scenarios, and in that case, the factual dispute would not be material.