

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00387-CV

TRACEY E. JONES AND LEE W. GRIFFIN, APPELLANTS

V.

BAYLOR SCOTT & WHITE HEALTH D/B/A BAYLOR SCOTT &
WHITE MEDICAL CENTER – LLANO, APPELLEE

On Appeal from the 33rd District Court
Llano County, Texas,[1]
Trial Court No. 20095, Honorable J. Allan Garrett, Presiding

November 20, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellants, Tracey E. Jones and Lee W. Griffin (collectively, "Jones"), appeal the

granting of summary judgment in favor of appellee, Baylor Scott & White Health d/b/a

Baylor Scott & White Medical Center – Llano (Scott & White Hospital), on their healthcare

---

[1] Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

liability claim.  In two issues, Jones contends that the trial court erred in determining that the treatment provided to Jones was "emergency medical care" as defined in the Texas Medical Liability Act (TMLA) and that there was no evidence that the emergency treatment proximately caused Jones's damages.  We affirm the judgment of the trial court.

Background

On March 25, 2015, Jones went to the emergency department of Scott & White Hospital complaining of a three-day history of nausea, vomiting, and abdominal pain. Jones reported the intensity of her pain as a "ten out of ten."  The hospital records show that Jones arrived at the emergency department at 4:53 a.m. and that she was taken to a room at 4:56 a.m.  At 5:01 a.m., Jones was triaged by registered nurse Leslie Nixon. Jones was triaged as an acuity level three, indicating that she was a patient that would require urgent treatment.

Dr. William Meiser, the treating physician in the emergency department, evaluated Jones at 5:12 a.m.  Dr. Meiser reviewed Nixon's nurse's notes, the history obtained from Jones, and Jones's vital signs.  Dr. Meiser's physical examination revealed tenderness in Jones's abdomen and he ordered a CT scan.  Dr. Meiser prescribed morphine for pain, intravenous fluids (IV) for dehydration, and an injection of Phenergan for nausea and vomiting.

Nixon carried out Dr. Meiser's orders relative to testing and medication.  At 5:28 a.m., Nixon administered a gluteal intramuscular injection of Phenergan in Jones's right ventrogluteal muscle, followed by a shot of morphine.  At 5:45 a.m., Nixon received Jones's lab report indicating a critical $CO_2$ lab value of 8 and notified Dr. Meiser.  Nixon

2

gave Jones another dose of morphine after Jones returned from the CT scan. Nixon continued to monitor Jones's condition until her shift ended at 7:00 a.m.

Dr. Meiser reviewed the lab and CT results and diagnosed Jones with acute pancreatitis. After consulting the admitting staff physician, Dr. Robert Hays, Dr. Meiser concluded that Jones could be moved to the "med-surg" department of the hospital for observation, as soon as a room was available.

At 7:55 a.m., Jones's care in the emergency department terminated and Jones was admitted to the hospital. Upon her arrival to the med-surg floor, nurse Johna Reavis noted that Jones's foot was numb and Jones had "limited movement from Phenergan shot in ER." Jones was treated by Dr. Hays and discharged from the hospital two days later. In addition to acute pancreatitis, Dr. Hays's discharge summary notes that Jones was diagnosed with "peroneal nerve palsy secondary to IM Phenergan injection given in ER."

Jones filed suit asserting a healthcare liability claim against Scott & White Hospital. Jones alleges that she suffered sciatic nerve damage and foot drop as a result of a Phenergan injection administered by Nixon in the hospital's emergency department.

Scott & White Hospital filed a traditional and no-evidence motion for summary judgment. In its traditional motion, the hospital argued that it established as a matter of law that Jones was provided with "emergency medical care" subject to the heightened willful and wanton standard of proof set out in Texas Civil Practice & Remedies Code section 74.153. Additionally, the hospital filed a no-evidence motion for summary judgment on the basis that there is no evidence of "willful and wanton negligence" in

3

providing emergency treatment to Jones or that the emergency treatment proximately caused Jones's damages, which are essential elements of Jones's claims on which she has the burden of proof at trial. After Jones filed a response, the trial court granted summary judgment in favor of Scott & White Hospital.

By her appeal, Jones, now deceased, presents two issues challenging the summary judgment. First, she contends that the trial court erred in determining that the treatment provided to her was "emergency medical care" as defined in the TMLA. In her second issue, Jones contends that the trial court erred in granting the no-evidence summary judgment on the element of proximate cause.

Standard of Review

An appellate court reviews a trial court's decision to grant a traditional summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). The party moving for a traditional summary judgment has the burden to establish there is no genuine issue of material fact with respect to an element of the nonmovant's cause of action and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Gibbs v. General Motors Corp.* 450 S.W.2d 827, 828 (Tex. 1970). In reviewing a trial court's ruling on summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

A no-evidence motion for summary judgment is a motion asserting that there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). In reviewing a no-evidence

4

summary judgment, we must consider all the evidence "in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Gonzalez v. Ramirez*, 463 S.W.3d 499, 504 (Tex. 2015) (per curiam) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). A no-evidence summary judgment is properly granted when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "Thus, a no-evidence summary judgment is improperly granted if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Id.* A court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

Discussion and Analysis

Jones's cause of action is based on medical malpractice. To recover, Jones must establish: (1) a duty by the healthcare provider to act according to a certain standard, (2) breach of the applicable standard of care, (3) an injury, and (4) a sufficient causal connection between the breach of the standard and the injury. *Benish v. Grotti,* 281 S.W.3d 184, 191 (Tex. App.—Fort Worth 2009, pet. denied). The medical standard of care is an essential element of Jones's medical negligence cause of action, establishing the standard against which the factfinder measures the healthcare provider's conduct.

5

*Coan v. Winters*, 646 S.W.2d 655, 657 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.) (threshold question in a medical malpractice case is the standard of care). When a healthcare liability claim against a healthcare provider is implicated and emergency medical care is involved, the legislature has heightened the standard of proof. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.153 (West Supp. 2020).[2] Under section 74.153, the claimant in a healthcare liability case involving "emergency medical care" must prove that the healthcare provider acted with willful and wanton negligence, as opposed to the traditional ordinary negligence standard. *Stamatis v. Methodist Willowbrook Hosp.,* No. 14-14-00492-CV, 2015 Tex. App. LEXIS 5541, at *5 (Tex. App.—Houston [14th Dist.] June 2, 2015, no pet.) (mem. op.).

Scott & White Hospital's no-evidence summary judgment contends that there was no evidence that nurse Nixon acted with "willful and wanton negligence" in providing emergency treatment to Jones or that the emergency treatment proximately caused Jones's damages, which are essential elements of Jones's claims. However, the willful and wanton standard of proof only applies if the care administered to Jones was "emergency medical care." Consequently, we must initially review the trial court's determination that the care administered by Scott & White Hospital was emergency medical care. This issue was raised by Scott & White Hospital as part of its traditional summary judgment motion.

---

[2] Further reference to provisions of the Texas Civil Practice & Remedies Code will be by reference to "section ____" or "§ ____."

Emergency Medical Care

In her first issue, Jones contends that the trial court erred in determining that the treatment provided to her was "emergency medical care" as defined in the Texas Medical Liability Act. The statutory definition of "emergency medical care," as used in section 74.153, is defined by section 74.001 as:

> [B]ona fide emergency services provided after the sudden onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. The term does not include medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency.

§ 74.001(a)(7) (West 2017).

"Emergency medical care" encompasses two elements: (1) the type of care provided (i.e., "bona fide emergency services"), and (2) the circumstances under which those services are provided. *Turner v. Franklin*, 325 S.W.3d 771, 777 (Tex. App.—Dallas 2010, pet. denied). "Bona fide emergency services" means any actions or efforts undertaken to diagnose or treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions; if those efforts or actions are provided during the time period and under the circumstances specified in section 74.001(a)(7), they constitute "emergency medical care" within the meaning of section 74.153. *Id*. at 778. The statute includes both the diagnosis and treatment of a condition that presents as a serious medical condition. *Burleson v. Lawson*, 487 S.W.3d 312, 320 (Tex. App.—Eastland 2016, no pet.). The

7

second element requires that care be provided after the "sudden onset" of a condition manifested with acute symptoms so severe that the absence of immediate medical attention could reasonably be expected to result in serious jeopardy or impairment to health. *Turner*, 325 S.W.3d at 777. It is the severity of the patient's condition, its rapid or unforeseen origination, and the urgent need for immediate medical attention—including diagnosis, treatment, or both—in order to minimize the risk of serious and negative consequences to the patient's health that comprise the second element of the definition of "emergency medical care." *Id.* The use of the phrase "could reasonably be expected," also makes clear that whether the circumstances meet the second element of "emergency medical care" must be viewed prospectively and objectively, not retrospectively or subjectively. *Id.* The section goes on to exclude "medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency." *Id.*

In this case, the summary judgment proof consisted of emergency department records and deposition transcripts of Jones and her healthcare providers. There is no dispute regarding the type of care provided or the circumstances under which Jones presented to the Scott & White Hospital emergency department. When Jones arrived, she reported a three-day history of nausea, vomiting, and severe abdominal pain. Jones described her pain as a "ten out of ten." Within a few minutes of her arrival in the emergency department, Jones was triaged at a level 3—urgent.

During the time that Jones was treated in the emergency department, her vital signs indicated elevated respirations, high blood pressure, tachycardia, and a critically low carbon dioxide level. Jones displayed acute symptoms of severity at the time she

8

was examined by Dr. Meiser which warranted immediate medical attention. Dr. Meiser prescribed Phenergan, morphine, and IV fluids, and he ordered lab work and a CT scan. This care provided was designed to diagnose and treat the condition of acute pancreatitis, a condition which required urgent medical care. According to Dr. Meiser's deposition testimony, a patient with Jones's history and symptoms would continue to worsen without medical intervention and is in danger of major organ failure or death. Jones's summary judgment evidence does not dispute the type of treatment provided, Jones's diagnosis of acute pancreatitis, or the hospital's evidence that acute pancreatitis requires emergency medical treatment. The uncontroverted evidence established that Scott & White Hospital provided "bona fide emergency services" to Jones when she sought treatment in the emergency department of Scott & White Hospital on March 25, 2015.

Jones asserts that there are three reasons that her treatment falls outside the definition of "emergency medical care" in section 74.001(a)(7): (1) Jones did not have a "sudden onset" of a medical or traumatic condition; (2) Jones's medical condition did not manifest in "acute symptoms of sufficient severity" to qualify as an emergency; and (3) Jones was "stabilized and capable of receiving medical treatment as a nonemergency patient."

In support of Jones's contention that there was no "sudden onset" of Jones's medical condition within the meaning of the "emergency medical care" definition, Jones relies on undisputed facts. Jones asserts there is a fact issue concerning "sudden onset" because she experienced symptoms for three days and that hers was not a "sudden onset" of a medical condition because Jones had the condition of acute pancreatitis for years. In our view, the duration of Jones's symptoms does not raise a fact issue on the

9

applicability of the "emergency medical care" definition. Dr. Meiser testified that Jones experienced "three days of symptoms suggestive of pancreatitis," that arose in a "sudden way" which indicates the "acute onset of her symptoms happened three days before." *See Ho v. Johnson*, No. 09-15-00077-CV, 2016 Tex. App. LEXIS 1668, at *31 (Tex. App.—Beaumont Feb. 18, 2016, pet. denied) (mem. op.) (emergency care rendered as a matter of law even though patient's symptoms present for three days). Jones's history of chronic pancreatitis does not diminish Dr. Meiser's diagnosis that Jones was suffering from acute pancreatitis when he treated her in the emergency department or affect the emergency services that Jones received after he examined her. Further, Jones does not present any evidence that refutes Dr. Meiser's testimony on this issue.

Jones also argues that her medical condition did not manifest in "acute symptoms of sufficient severity" to qualify as an emergency. Jones points to Dr. Meiser's testimony that she could be moved to the "med-surg" department as soon as a room was available, that Jones did not need to be treated in the emergency department, and both Nixon and Dr. Meiser assessed her as a non-emergent patient.

It is undisputed that Jones was diagnosed with acute pancreatitis after she was evaluated in the emergency department of Scott & White Hospital complaining of the symptoms in question. Jones did not offer any evidence concerning whether acute pancreatitis is a type of condition intended to be covered by the emergency medical care standard, but Scott & White Hospital offered uncontroverted evidence on the dangers of acute pancreatitis through the deposition testimony of Dr. Meiser. Dr. Meiser testified that "a patient with acute pancreatitis is in danger. If their inflammation continues to progress, they're in danger of major organ failure, mortality." According to Dr. Meiser,

10

acute pancreatitis involves "ongoing inflammation of the cells of the pancreas, and they're being disrupted . . . cells are releasing some of their enzymes into the serum and an acute process of pain usually accompanied by nausea and vomiting because it's a serious situation."

Whether Jones could have been treated non-emergently or was treated non-emergently does not raise a fact issue as to whether Scott & White Hospital is entitled to the benefit of section 74.153. *Turner*, 325 S.W.3d at 777 n.6 (limiting section 74.153 to only those situations where it is determined, after the fact, that a real emergency existed would frustrate the statute's purpose).

Finally, Jones contends that by the time she was injured by the improper administration of an injection, the emergency department doctor and nurse had already rated her as a non-emergency patient and, before the injection, the doctor had already determined that she did not need to be treated in the emergency department and had ordered that she be transferred to a non-emergency department as soon as a room was available. Jones maintains that she presented more than a scintilla of evidence that, at the time she was seen by Dr. Meiser at 5:12 a.m., she was stable and "capable of receiving medical treatment as a nonemergency patient."

The summary judgment evidence does not support Jones's contention that she was stabilized at 5:12 a.m. because Nixon had not yet performed necessary nursing functions ordered by Dr. Meiser which were "part and parcel" of the emergency medical services provided to Jones. *Crocker v. Babcock*, 448 S.W.3d 159, 167 (Tex. App.— Texarkana 2014, pet. denied). Viewing Jones's evidence in a light most favorable to her,

11

we cannot conclude that Jones's condition was stable at 5:12 a.m. To the contrary, Jones's symptoms were not resolved at that time. Further, Jones does not contradict the summary judgment evidence that her condition would continue to deteriorate absent medical treatment which also indicates that she was not stable prior to receiving the treatment prescribed by Dr. Meiser.

The summary judgment evidence in this case established that acute pancreatitis is an emergency medical condition, which manifested itself through "acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing [Jones's] health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part." § 74.001(a)(7). The treatment that Jones received for her complaints is consistent with the definition of "emergency medical care" as defined by section 74.001(a)(7). While the determination of what services and circumstances constitute "emergency medical care" may involve a fact issue, no fact issues were present in this case. *Helix Energy Sols. Grp., Inc. v. Gold,* 522 S.W.3d 427, 444 (Tex. 2017) (summary judgment appropriate for determining whether the law was correctly applied to undisputed facts). Thus, applying the law to the undisputed material facts, we conclude the emergency care and treatment provided by Scott & White Hospital and its employee Nixon falls within the type of emergency care outlined in section 74.153. Accordingly, the "willful and wanton" standard of proof applies to Jones's claim against nurse Nixon.

Having determined that the summary judgment evidence in this case established that there is no genuine issue of material fact and Jones's claim is subject to the

12

heightened "willful and wanton" standard of proof as a matter of law, we turn to the no-evidence grounds of Scott & White Hospital's motion for summary judgment.

In their no-evidence motion for summary judgment, Scott & White Hospital asserted two no-evidence grounds: "willful and wanton negligence" in providing emergency treatment to Jones, and that the emergency treatment proximately caused Jones's damages, both of which are essential elements of Jones's claims on which she bore the burden of proof at trial. The trial court is obligated to grant the no-evidence motion unless the non-movant, Jones, produces summary judgment evidence raising a genuine issue of material fact as to each challenged element. TEX. R. CIV. P. 166a(i); V*iasana v. Ward Cty.*, 296 S.W.3d 652, 655 (Tex. App.—El Paso 2009, no pet.).

Here, Jones did not produce any evidence that nurse Nixon acted with willful and wanton negligence in response to the hospital's no-evidence motion.[3] As such, Jones cannot meet her burden to show that Nixon breached the standard of care, a necessary element in Jones's malpractice claim. When a trial court's summary judgment rests upon more than one independent ground, as the judgment does here, the aggrieved party must assign error to each ground or the judgment will be affirmed on any unchallenged ground. *Miller v. Galveston/Houston Diocese*, 911 S.W.2d 897, 899 (Tex. App.—Amarillo 1995, no writ) (appellant must address each summary judgment ground asserted and why it is deficient to support judgment). Accordingly, we conclude the trial court did not err in granting the no-evidence summary judgment on this ground and we overrule issue one.

---

[3] In her response, Jones alleged that if the trial court denied the traditional motion for summary judgment, (applying the "emergency medical care" standard in section 74.153), then "evidence of willful and wanton conduct []is rendered moot."

13

As resolution of issue one is dispositive of Jones's appeal, we do not reach her second issue. *See* TEX. R. APP. P. 47.1.

## Conclusion

Finding no error, we affirm the trial court's judgment.


Judy C. Parker
Justice

14