**Tammy Jean BEATTY, In Her Individual Capacity, Appellant,**

v.

**David CHARLES, Appellee.**

**No. 04–95–00344–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 13, 1996.

Albert Lopez, Lopez & Smith, P.C., San Antonio, for Appellant.

Howard (Ben) E. Davis, Raymond S. De Leon, II, Flowers & Davis, San Antonio, for Appellee.

Before CHAPA, C.J., and LOPEZ and STONE, JJ.

### OPINION

LOPEZ, Justice.

This interlocutory appeal arises from the trial court's denial of summary judgment based on official immunity. Appellee, David Charles, sued appellant, Tammy Jean Beatty, for damages arising from a car accident that occurred between them while Beatty was working as a police officer for the City of Olmos Park. Beatty moved for summary judgment on the basis of official immunity and, in one point of error, contends that the trial court erred in denying her motion for summary judgment. We affirm.

### Summary of Facts

On the evening of December 11, 1992, Officer Beatty was on patrol in Olmos Park when she heard a San Antonio dispatcher request assistance for an officer who had been shot. Beatty was close to the scene although it was outside her jurisdiction; she requested and received permission from her supervisor to respond to the call.

Beatty claims that she activated the sirens and flashing lights on her marked patrol car. When she approached the intersection of Shook and Hildebrand in San Antonio, she slowed but did not stop for the red light. Although she was exceeding the speed limit before entering the intersection, she said she slowed to look for other vehicles before running the light. When she entered the intersection, Beatty's vehicle was struck by a motorcycle driven by David Charles. According to Charles, Beatty's lights and siren were not turned on, and he did not see the patrol car until it was too late to stop.

Charles sued Beatty in her individual capacity for negligence and negligence per se. He also sued Olmos Park on the basis of respondeat superior.[1] In his petition, Charles contends that Beatty failed to control her vehicle, observe a traffic signal, and activate her lights and siren. In response to Beatty's motion for summary judgment, Charles also maintained that Beatty acted improperly because the emergency occurred outside her jurisdiction. Beatty appeals the denial of her motion for summary judgment. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(5) (Vernon Supp.1996) (authorizing interlocutory appeal).

## Standard of Review

In a motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). Evidence favorable to the nonmovant is taken as true, and every reasonable inference in favor of the nonmovant will be resolved in its favor. *Id.* at 548–49. When a defendant moves for summary judgment on an affirmative defense, like official immunity, the defendant must conclusively prove each element of the defense as a matter of law. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

1. "To avoid confusion, plaintiffs should ideally include the relevant capacity in the style of their suit." *Morris v. Collins*, 916 S.W.2d 527, 530 n. 2 (Tex.App.—Houston [1st Dist.] 1995, no writ)

## Argument on Appeal

In a single point of error, Beatty argues the trial court erred in denying her motion for summary judgment based on immunity. Official immunity is a common-law defense that protects government officers and employees from personal liability. *See Chambers*, 883 S.W.2d at 653. Government employees are entitled to immunity from suit arising from the performance of (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Id.* Charles does not contest that Beatty was performing a discretionary duty within the scope of her authority. We therefore address only whether Beatty acted in good faith in responding to the emergency call. *See Antu v. Eddy*, 914 S.W.2d 166, 170 (Tex.App.—San Antonio 1995, no writ).

## Good Faith

To be entitled to summary judgment, a police officer must prove that a reasonably prudent officer, under the same or similar circumstances, might have believed that the action taken was justified. *Chambers*, 883 S.W.2d at 656–57; *Antu*, 914 S.W.2d at 171. The officer does not need to prove that it would have been unreasonable to take a different action; nor must the officer prove that all reasonably prudent officers would have acted as she did. *Chambers*, 883 S.W.2d at 657. Whether the officer is negligent is not dispositive of the good faith element. *Id.* at 655; *City of Beverly Hills v. Guevara*, 911 S.W.2d 901, 904 (Tex.App.—Waco 1995, no writ).

To controvert the officer's summary judgment proof on good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to take a different action; the plaintiff must produce evidence that no reasonable person in the defendant's position could have thought that the facts were such that they justified the defendant's acts. *Chambers*, 883 S.W.2d at 657.

(O'Connor, J., concurring); *see also First State Bank of Dumas v. Sharp*, 863 S.W.2d 81, 83 (Tex.App.—Austin 1993, no writ). Accordingly, we amend the style of this appeal.

■ Good faith can be established by expert testimony that states the underlying facts and relates an objective conclusion, using words similar to those of the *Chambers* test. *See, e.g., Gallia v. Schreiber,* 907 S.W.2d 864, 869–70 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Texas Dep't of Public Safety v. Perez,* 905 S.W.2d 695, 700 (Tex.App.—Houston [14th Dist.] 1995, writ denied); *see also* TEX.R. CIV. P. 166a(c). However, conclusions that fail to demonstrate an objective approach are insufficient proof. *See, e.g., Cameron County v. Alvarado,* 900 S.W.2d 874, 880–81 (Tex.App.—Corpus Christi 1995, writ dism'd w.o.j.).

■ Beatty's summary judgment evidence included the deposition testimony of Michael Ullevig, police chief for the City of Olmos Park. Regarding Beatty's good faith, Ullevig testified as follows:

Q. Okay. And did you feel that Officer Beatty responded appropriately to the emergency that she was responding to on December 11th, 1992 insofar as the welfare of people who might be crossing that intersection is concerned?

A. *I believe she did. I believe she had earnestly believed* that she was trying to look out for everyone in the area.

. . . .

Q. Based on her statement and her report and the accident report she filled out and the report of the City of San Antonio Police Department and the witness statements that you reviewed, you were satisfied that her conduct met the accepted standards within the City of Olmos Park.

A. Yes, sir.

(Emphasis added).

Ullevig's testimony shows that he thought (1) Beatty acted reasonably; and (2) Beatty believed she acted reasonably. This evidence tends to prove that Beatty was not negligent, but it does not establish as a matter of law whether reasonable police officers might have responded to the emergency call in the same manner as did Beatty.[2]

■ Good faith may also be established through the testimony of the officer herself. *See, e.g., Barker v. City of Galveston,* 907 S.W.2d 879, 888 (Tex.App.—Houston [1st Dist.] 1995, writ denied, June 14, 1996); *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 121 (Tex.App.—Houston [1st Dist.] 1995, no writ). The underlying facts must be verifiable and readily controvertible. *See Rhodes v. Torres,* 901 S.W.2d 794, 798–800 (Tex.App.—Houston [14th Dist.] 1995, no writ); TEX.R. CIV. P. 166a(c).

Beatty's affidavit details the events leading up to the accident, including the seriousness of the emergency, the road conditions, and her supervisor's approval of the response outside her jurisdiction. The affidavit also states:

*I turned on the police car's overhead emergency lights and siren* and immediately started traveling on Hildebrand Road toward the location of the reported shooting. I was traveling at about 45 miles per hour. There was no traffic on the road. As I approached the intersection of Hildebrand and Shook, I observed that the traffic light controlling the intersection was red for vehicles traveling in my direction and green for the traffic traveling on Shook.

. . . .

As I slowed down, almost coming to a stop, I looked to the left and right on Shook to see if there were any cars approaching the intersection and to see whether I could cross the intersection safely. I did not see any vehicles approaching the intersection and without making a full stop, I then decided to enter the intersection. . . .

I was responding to an emergency and it was imperative that a police officer provided [sic] immediate assistance to the officer who had been reported shot.

(Emphasis added).

According to Beatty's affidavit, she received permission to respond, activated her lights and sirens, observed the road conditions, looked for other cars, and slowed before entering the intersection. Given these details, we conclude that reasonable minds

---

2. Charles' expert testified about Beatty's negligence but did not apply the objective analysis

required by *Chambers* when he stated, "Beatty did not act as a reasonably prudent officer."

could not differ about the conclusion drawn from them, that is, a reasonable officer in the same or similar circumstances might have responded to the emergency in the same fashion as Beatty. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982) (fact issue may be established as a matter of law if reasonable minds could not differ).

Nonetheless, we hold that Charles controverted Beatty's evidence of good faith. Charles' deposition, attached to both Beatty's motion for summary judgment and his response to the motion, states, in part:

Q. And you didn't hear any sirens?

A. No.

Q. And you didn't hear any—you didn't see any flashing lights; is that right?

A. No.

. . . .

Q. And you did not see the reflection of emergency lights in the pavement or against any buildings or anything like that before the impact?

A. There was no indication to me that a police officer was going to be speeding through the intersection.

(Emphasis added).

 Beatty maintains that Charles' failure to hear and see her is not equivalent to denying that her lights and siren were in operation. Any doubts about the testimony must be resolved in Charles' favor. This testimony, when viewed in the light most favorable to Charles, directly conflicts with a material fact necessary to show Beatty's good faith. While a reasonable police officer might not have turned on her lights and sirens when responding to this emergency,[3] reasonable minds could differ about that conclusion when reviewing the facts presented by this summary judgment evidence. *See Victory v. Bills,* 897 S.W.2d 506, 509 (Tex. App.—El Paso 1995, no writ) (reasonable use of force to make arrest could not be determined where officer contended plaintiff resisted arrest and plaintiff contended he was

physically unable to do so); *see also Texas Dep't of Public Safety v. Tanner,* 928 S.W.2d 731, 736 (Tex.App.—San Antonio 1996, no writ) (suggesting language to prove good faith).

We hold that a genuine issue of material fact precluded summary judgment in Beatty's favor, and we overrule Beatty's second point of error.

### Conclusion

We affirm the trial court's order.

---

**3.** A police officer may respond to an emergency without audible or visual signals if the officer complies with local regulations or if use of the signals would increase the potential for a collision or unreasonably extend the duration of the pursuit. TEX. TRANSP. CODE ANN. § 546.004(c) (Vernon 1996).