Anthony CARROLA and Richard Gonzales, In their Individual Capacities, Appellants,

v.

Enrique L. GUILLEN, Individually; Enrique L. Guillen as Personal Representative of the Estate of Esperanza Guillen; Enrique L. Guillen as next friend of Valeria E. Guillen, A Minor; and Enrique Guillen, II, Appellees.

No. 04–95–00721–CV.

Court of Appeals of Texas, San Antonio.

Nov. 27, 1996.

Dawn L. Carmody, San Antonio, for Appellants.

Don W. King, Jr., Daniel R. Rutherford, The Law Offices of Daniel R. Rutherford, San Antonio, for Appellees.

Before LOPEZ, STONE and HARDBERGER, JJ.

## OPINION

LOPEZ, Justice.

This interlocutory appeal questions whether firefighter/paramedics are entitled to official immunity when they respond to an emergency call. The appellants, Anthony Carrola and Richard Gonzales, are firefighter/paramedics for the City of San Antonio who were sued for the wrongful death of Esperanza Guillen by the appellees, Enrique L. Guillen and Enrique L. Guillen, II (collectively, Guillen). Carrola and Gonzales appeal the denial of their motion for summary judgment based on official immunity. We affirm the trial court's order because we find that Carrola and Gonzales failed to establish, as a matter of law, their exercise of governmental discretion.

### Summary of Facts

On September 18, 1990, Carrola and Gonzales responded to an emergency call at the Guillen home where they found Mrs. Guillen in severe respiratory distress. Rather than immediately transport Mrs. Guillen, the paramedics moved her to the ambulance where they contacted medical control, requested backup, administered medication, and intubated the patient to assist her breathing. Mrs. Guillen then suffered a heart attack, and Carrola and Gonzales began cardiopul-

monary resuscitation. When a third technician arrived to assist this procedure, they left for the hospital. Mrs. Guillen died shortly after arriving at the hospital although the entire call, from dispatch to emergency room, took twenty-four minutes.

Guillen sued Carrola and Gonzales for negligence and gross negligence.[1] Specifically, Guillen alleged that Carrola and Gonzales (1) improperly used, misused, or did not use tangible property; (2) violated standard operating procedures regarding the treatment and transportation of patients; (3) failed to promptly transport Mrs. Guillen to a hospital; and (4) failed to surrender authority to an on-site physician.[2] Carrola and Gonzales appeal the denial of their motion for summary judgment based on official immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1997) (authorizing interlocutory appeal).

### Standard of Review

■ In a motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). Evidence favorable to the nonmovant is taken as true, and every reasonable inference in favor of the nonmovant will be resolved in its favor. *Id.* at 548–49. When a defendant moves for summary judgment on an affirmative defense, like official immunity, the defendant must conclusively prove each element of the defense as a matter of law. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex. 1994); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

### Official Immunity

■ Official immunity is a common-law defense that protects government officers

1. "To avoid confusion, plaintiffs should ideally include the relevant capacity in the style of their suit." *Morris v. Collins,* 916 S.W.2d 527, 530 n. 2 (Tex.App.—Houston [1st Dist.] 1995, no writ) (O'Connor, J., concurring); *see also First State Bank of Dumas v. Sharp,* 863 S.W.2d 81, 83 (Tex.App.—Austin 1993, no writ). Accordingly, we amend the style of this appeal. Guillen also

sued the City of San Antonio, which is not a party to this appeal.

2. In this opinion we focus on the issue of medical versus governmental discretion. We therefore do not consider whether Dr. Guillen's identification of himself as a treating physician was relevant to the other elements of official immunity.

and employees from personal liability. *See Chambers,* 883 S.W.2d at 653. Government employees are entitled to immunity from suit arising from the performance of (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Id.* at 653. However, "government employed medical personnel are not immune from tort liability if the character of the discretion they exercise is medical and not governmental." *Kassen v. Hatley,* 887 S.W.2d 4, 11 (Tex.1994).

■ In two points of error, Carrola and Gonzales maintain the trial court erred in finding genuine issues of material fact concerning the elements of their official immunity defense. Essentially, Guillen agrees that Carrola and Gonzales exercised discretion rather than acted ministerially. By cross-point, however, he argues that the other elements of official immunity are irrelevant because the paramedics were exercising purely medical discretion and were not entitled to immunity under *Kassen.*

In *Kassen,* a mental health patient presented herself for admission at a state-run psychiatric hospital. 887 S.W.2d at 7. She did not receive treatment because her file indicated she needed to be referred to another hospital. *Id.* After the patient left the hospital, she committed suicide. *Id.* Her survivors sued the treating physician and one of the hospital's nurses. *Id.* In remanding to the trial court, the Supreme Court concluded that the evidence failed to establish the defendants' exercise of governmental versus medical discretion. *Id.* at 12. The court explained that once a government health-care provider begins to treat a patient, the duty of care owed to that patient is no different from the duty of care owed by any other medical professional. *Id.* at 10. If a health-care provider does not perform a medical procedure with the level of care and skill of an ordinarily prudent health-care provider, a patient injured as a result should not suffer without compensation for the sole reason that the health-care provider is a government employee. *Id.*

However, the court recognized that government service "imposes constraints and responsibilities on health-care providers that private practitioners do not have." *Id.* For example, government health-care providers have less latitude in choosing patients and have policy-making and administrative responsibilities that may involve allocation of scarce government resources. *Id.* "Because of these circumstances, the good faith performance of governmental responsibilities should not be subject to second-guessing in the courtroom." *Id.* Such litigation would drain state resources and discourage qualified individuals from entering public service. *Id.; see also Baker v. Story,* 621 S.W.2d 639, 643–44 (Tex.App.—San Antonio 1981, writ ref'd n.r.e.).

The Supreme Court balanced these conflicting concerns by holding that "government-employed medical personnel are not immune from tort liability arising from the negligent exercise of medical discretion;" on the other hand, the health-care provider would be immune from liability arising from the exercise of governmental discretion. *Kassen,* 887 S.W.2d at 11 (rejecting the "uniquely governmental" test as too restrictive towards the government employee). The court anticipated "difficult cases" and cautioned that each situation should be decided "upon the facts of the individual case and the underlying policies promoted by official immunity." *Id.* at 12.

■ The court stressed that decisions about governmental discretion must "necessarily involve a balancing of individual rights and the public interest." *Id.* It recommended that we consider the following factors:

1. the nature and importance of the function that the employee is performing,

2. the extent to which passing judgment on the exercise of discretion by the employee will amount to passing judgment on the conduct of a coordinate branch of government or an agency thereof,

3. the extent to which the imposition of liability would impair the employee's free exercise of discretion,

4. the extent to which financial responsibility will fall on the employee,

5. the likelihood that harm will result to the public if the employee acts,

6. the nature and seriousness of the type of harm that may be produced, and

7. the availability to the injured party of other remedies and forms of relief.

*Id.* at n. 8 (citing RESTATEMENT (SECOND) OF TORTS § 895D cmt. f (1977)).

In examining these factors, we conclude that emergency medical service is particularly deserving of immunity. *See Mejia v. City of San Antonio,* 759 S.W.2d 198, 200 (Tex. App.—San Antonio 1988, no writ) (describing the service as a governmental function); *Ayala v. City of Corpus Christi,* 507 S.W.2d 324, 328 (Tex.Civ.App.—Corpus Christi 1974, no writ) ("emergency ambulance service ... protect[s] the health, safety, and general welfare"). In a pre-*Kassen* case, we held that official immunity was available to a paramedic sued in his individual capacity. *Casas v. Gilliam,* 869 S.W.2d 671, 674 (Tex.App.—San Antonio 1994, no writ). We believe that official immunity may be available to paramedics in a proper post-*Kassen* case. *Cf. Gross v. Innes,* 930 S.W.2d 237, 240 (Tex.App.—Dallas 1996, n.w.h.) (finding that "public policy does not preclude applying *Kassen* to paramedics"); TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2) (Vernon Supp.1997) (establishing sovereign immunity when a government employee responds to an emergency).[3] Nonetheless, the paramedic moving for summary judgment must establish his or her right to summary judgment as a matter of law. *See Mejia,* 759 S.W.2d at 200; *cf. City of Irving v. Pak,* 885 S.W.2d 189, 192 (Tex. App.—Dallas 1994, dism'd w.o.j.) (rejecting immunity when paramedics did not establish they were performing uniquely governmental functions).

In this case, the summary judgment evidence provided by the paramedics includes the affidavit of Dr. Donald J. Gordon, the director of San Antonio's EMS system. Dr. Gordon said:

In San Antonio the municipal EMS System is the principal provider of emergency medical service throughout the San Antonio area.... The paramedics employed by EMS are consistently called upon to attend to a range of police and fire emergencies, including medical emergencies requiring treatment and emergency transport. Because of the unique function that EMS responders serve the community at large, paramedics and EMT's are trained in all aspects of both emergency medical care and emergency response including emergency vehicle handling and driving which is an integral part of the duties of a paramedic-EMT.

. . . .

As part of their official duties with EMS, firefighter-paramedics drive an EMS unit to the scene of all types of emergency situations, regardless of whether there is an actual medical emergency at the location or not.... In this respect, *during any response regardless of what type, paramedics not only exercise medical discretion and judgment in connection with the treatment and transport of the injured, but they exercise governmental discretion* and judgment in that their duties as require them [sic] to drive an emergency vehicle upon public roadways in furtherance of the health and safety of the general public, manage the scene of an emergency upon arrival and throughout the time that they remain present on a scene, as firefighters if necessary, and to otherwise evaluate, manage and control the scene of any emergency to which they are dispatched.

(Emphasis added.)

While Dr. Gordon said that "it is impossible to make clear distinctions between paramedic and firefighting functions," he also

---

3. TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2) (Vernon Supp.1997) was not raised in the trial court. It states:

This chapter [the waiver of governmental immunity in the Texas Tort Claims Act] does not apply to a claim arising ... (2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to an emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious disregard for the safety of others[.]

*Id.* We do not address whether this provision protects individual employees.

stated that the decisions of Carrola and Gonzales were "related to how, when, where, and by what method to treat, medicate or transport Mrs. Guillen." Dr. Gordon did not correlate the governmental aspect of the firefighter/paramedics' job to the events leading up to Mrs. Guillen's death.

When describing their general duties as firefighter/paramedics, Carrola and Gonzales each state that "paramedics often manage the scene and make it safe, regardless of whether we actually treat or transport anyone for a medical purpose or not." Carrola adds, "Because paramedics are often required to resolve site safety concerns before or in addition to rendering emergency medical treatment or transporting patients, paramedics often perform the same functions as a police officer or firefighter while at the scene." However, neither Carrola nor Gonzales indicate that the actions they took in this case were related to governmental concerns. In short, the summary judgment evidence does not show that governmental discretion played a role in the decisions that form the basis of this lawsuit. *See Gross,* 930 S.W.2d at 241 (concluding that "summary judgment evidence did not conclusively establish that governmental factors colored [paramedics'] discretion"); *Bossley v. Dallas County Mental Health & Mental Retardation,* No. 05–91–00284–CV, 1996 WL 585141, slip op. at 17 (Tex.App.—Dallas, Feb.17, 1995, n.w.h.) (designated for publication).

Because Carrola and Gonzales failed to establish their exercise of governmental discretion as a matter of law, we cannot say the trial court erred in denying their motion for summary judgment based on official immunity. Accordingly, we overrule their points of error without discussing their challenge to the elements of good faith and scope of authority.

### Conclusion

We affirm the trial court's order.