The CITY OF EL PASO, Emergency Medical Services, Judy McGlothin, and Donald Wilson, Jr., Appellants,

v.

Hobart HIGGINBOTHAM, as Independent Executor of the Estate of Ruth L. Higginbotham, Deceased, Peter Higginbotham, and Elsa Powers, Appellees.

No. 08–98–00158–CV.

Court of Appeals of Texas, El Paso.

May 13, 1999.

John Gates, Assistant City Attorney, Cynthia Adams, Assistant City Attorney, El Paso, for Appellants.

Valli Jo Acosta, Law Offices of Malcolm McGregor, El Paso, John C. Schwambach, Jr., Houston, John A. Cowan, El Paso, for Appellees.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

This is an interlocutory appeal from an order denying summary judgment in favor of the City of El Paso, Emergency Medical Services, Judith McGlothin, and Donald Wilson, Jr. ("Appellants"). We affirm the judgment of the trial court.

On February 18, 1991, emergency medical services personnel responded to a call for assistance from the home of Hobart Higginbotham. Donald Wilson, Jr. ("Wilson"), Judy McGlothin ("McGlothin"), and Roy Martinez ("Martinez") were the three emergency medical technicians that arrived by ambulance at the Higginbotham residence. After a brief examination, Wilson and McGlothin determined that Hobart Higginbotham needed to be taken to the hospital. The EMTs loaded Higginbotham into the ambulance and proceeded to Sierra Medical Center as a "Code 3" emergency.[1] Wilson drove the ambulance while McGlothin and Martinez attended Higginbotham. Elsa Powers, Higginbotham's daughter, and Ruth Higginbotham, his wife, followed the ambulance in Elsa's car. Peter Higginbotham followed the ambulance in his own vehicle.

As the ambulance was nearing the intersection of Transmountain Road and Gateway South, McGlothin loosened the restraint that ran across Hobart Higginbotham's chest to allow Martinez to check Hobart Higginbotham's blood pressure and other vital signs. When the ambulance entered the intersection, it collided with the vehicle driven by Peter Smith. At some time after the initial collision, Hobart Higginbotham fell off the stretcher on to the floor of the ambulance. Hobart Higginbotham's family witnessed the accident and also saw Mr. Higginbotham lying on the floor of the ambulance. Elsa Powers, Ruth Higginbotham, and Peter Higginbotham brought suit against the City of El Paso, Emergency Medical Services, McGlothin, and Wilson for bystander injuries resulting from their witnessing the accident. Smith brought suit against the City of El Paso and Wilson for injuries he

---

1. Under Code 3, an ambulance should drive with its lights and siren operating. The ambulance may exceed the speed limit and may proceed through a controlled intersection if the driver sees that the intersection is clear. Otherwise, an ambulance driver is bound by the general traffic laws.

sustained as a result of the collision. The City of El Paso brought a cross-claim against Smith alleging that Smith's negligence was the proximate cause of Smith's injuries as well as those of the Higginbotham family.

Appellants sought summary judgment on the grounds that suit was barred by the doctrine of sovereign immunity, among other grounds. They argued that Wilson and McGlothin, as employees of the City, were protected from suit by qualified immunity and that the City of El Paso enjoyed sovereign immunity. The trial court denied Appellants' motion for summary judgment. Appellants bring this interlocutory appeal of the trial court's denial of summary judgment. See TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.1999) (authorizing interlocutory appeal).

Appellants appeal the trial court's denial of their motion for summary judgment. In their sole issue on appeal, Appellants argue that they were entitled to summary judgment because the Higginbotham family's lawsuit was barred by (1) the qualified immunity enjoyed by Wilson and McGlothin, and (2) the sovereign immunity enjoyed by the City of El Paso. The standards for reviewing the denial of a motion for summary judgment are well established. As mandated by the Texas Supreme Court, they are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). In other words, the issue on appeal is not whether the non-movant raised a material issue of fact precluding summary judgment, rather, the issue is whether the movant proved it was entitled to judgment as a matter of law. See TEX.R.CIV.P. 166a(c); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828–29 (Tex.1970). To prevail on summary judgment, Appellants, as defendants and movants, must establish as a matter of law all the elements of an affirmative defense or show that at least one element of the plaintiffs' cause of action has been conclusively established against the plaintiffs. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Gibbs*, 450 S.W.2d at 828. When, as in this case, the trial court does not specify the grounds upon which it based its ruling, the denial of summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Simmons v. Ware*, 920 S.W.2d 438, 443 (Tex.App.—Amarillo 1996, no writ).

Official immunity is an affirmative defense. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465 (Tex.1997); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). Accordingly, a defendant has the burden of establishing all elements of the defense. *Chambers*, 883 S.W.2d at 653. A governmental employee is entitled to official immunity from a suit arising from the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *Wadewitz*, 951 S.W.2d at 466; *Chambers*, 883 S.W.2d at 653. The parties contest whether the EMTs' actions were discretionary and whether the EMTs acted in good faith.

In support of their motion for summary judgment, Appellants relied on the deposition testimony of Wilson and McGlothin and the affidavit of William H. Brown II, an expert witness. After the plaintiffs objected, the trial court refused to consider Brown's affidavit because it was fatally defective. In his affidavit, Brown indicat-

ed that he had relied on the police report of the accident and the emergency medical services protocol in effect at the time of the accident. The police report and the protocol guidelines were referred to in the affidavit. However, Appellants failed to attach sworn or certified copies of the documents to the affidavit in violation of Tex.R.Civ.P. 166a(f). *See Ceballos v. El Paso Health Care Systems*, 881 S.W.2d 439, 445 (Tex.App.—El Paso 1994, writ denied). Accordingly, we will not consider Brown's affidavit. *See id.*

■ In determining whether a government employee is performing a discretionary duty, our focus should be on whether the employee is performing a discretionary function, not on whether the employee has discretion to do an allegedly wrongful act while discharging that function. *Chambers*, 883 S.W.2d at 653. A ministerial act is one:

> '[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment ... but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.'

*Chambers*, 883 S.W.2d at 654. Actions which require obedience to orders or the performance of a duty to which the actor has no choice are ministerial. *Id.* An action which involves personal deliberation, decision, and judgment is discretionary. *Id.*

■ Appellees argue that Wilson was merely performing a ministerial duty at the time of the accident. They argue that Wilson's action of driving the ambulance in a negligent manner is not immune from liability because it is ministerial in nature. They assert that Wilson was driving away from the Higginbotham residence where the medical emergency had already occurred. Finally, they argue that Wilson was supposed to be driving in accordance with applicable rules and guidelines and thus was not exercising discretion.[2] We disagree.

An EMT's decisions concerning how to transport a person to a medical facility will fundamentally involve his discretion. The EMT must, in the first instance, decide whether the person needs to be transported to a medical facility. Beyond that initial decision, a transferral to a medical facility involves the EMT's discretion on a number of levels, including, the severity of the person's need for medical attention, which medical facility the person should be transported to, which route should be followed, and at what speed. Because a person's condition may change during the course of the conveyance, the EMT must

**2.** In this final argument, Appellees seem to argue that the rules, regulations, and other guidelines governing the duty of care owed by Wilson vitiated Wilson's discretion and rendered his actions ministerial. The Texas Supreme Court has rejected a similar argument stating:

> The court of appeals held that because the officers did not have discretion to drive their vehicles without due regard for the safety of others, their actions could not be protected by official immunity. [*Citation* omitted]. We disagree.... If official immunity existed only in the cramped sense used by the court of appeals, its qualified promise against personal civil liability to public officers would be hollow indeed. The purpose of the doctrine of official immunity is to protect public officers from civil liability for conduct that would otherwise be actionable.

*Chambers*, 883 S.W.2d at 653–54. As to whether the traffic regulations and other rules concerning the duty of care of persons operating emergency vehicles rendered their actions ministerial, the Court stated:

> Chamber's argument, that an officer is without discretion to drive in a manner which violates these statutorily-imposed standards of care, inexorably leads to the conclusion that an officer is not entitled to immunity if the officer is negligent. That formulation of the standard frustrates official immunity's very function. If public officials perform their duties without negligence, they do not need immunity. The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently.

*Id.* at 655.

constantly reassess the situation and exercise his discretion accordingly. We hold that Wilson's conveyance of Hobart Higginbotham to a hospital was a discretionary act. *C.f. Chambers*, 883 S.W.2d at 655 (holding that police officer's engaging in a high-speed pursuit was a discretionary act because the officer must decide whether to engage in pursuit, what route to take, at what speed to proceed, whether back-up should be called for, and how closely the fleeing vehicle should be pursued).

▮▮▮▮ Likewise, the parties argue whether McGlothin's actions were discretionary. Shortly after the opinion in *Chambers* was issued, the Texas Supreme Court held that "government-employed medical personnel are not immune from tort liability if the character of the discretion they exercise is medical and not governmental." *Kassen v. Hatley*, 887 S.W.2d 4, 11 (Tex.1994). On the other hand, such medical personnel will be immune from liability arising from the exercise of governmental discretion. *Id.* Because the determination of whether government-employed medical personnel exercised governmental discretion or medical discretion can be quite difficult, each situation would be decided "upon the facts of the individual case and the underlying policies promoted by official immunity." *Id.* at 12. Decisions concerning governmental discretion "involve a balancing of individual rights and the public interest." *Id.* Factors to be considered include: (1) the nature and importance of the function that the employee is performing; (2) the extent to which passing judgment on the exercise of discretion by the employee will amount to passing judgment on the conduct of a coordinate branch of government or an agency thereof; (3) the extent to which the imposition of liability would impair the employee's free exercise of discretion; (4) the extent to which financial responsibility will fall on the employee; (5) the likelihood that harm will result to the public if the employee acts; (6) the na-

ture and seriousness of the type of harm that may be produced; and (7) the availability to the injured party of other remedies and forms of relief. *Id.* at n. 8, *citing* RESTATEMENT (SECOND) OF TORTS § 895D cmt. f (1977).

Recently, the San Antonio Court of Appeals applied the *Kassen* test in a tort action involving paramedics. *See generally Carrola v. Guillen*, 935 S.W.2d 949 (Tex. App.—San Antonio 1996, no writ). After reviewing the factors enumerated in *Kassen*, we agree that emergency medical service personnel are particularly deserving of immunity. *See id.* at 952. "Nonetheless, the paramedic moving for summary judgment must establish his or her right to summary judgment as a matter of law." *Id.,citing Mejia v. City of San Antonio*, 759 S.W.2d 198, 200 (Tex.App.—San Antonio 1988, no writ).

In this case, Appellants argue that McGlothin was exercising governmental discretion because her actions related to the management and control of the scene of an emergency, not the diagnosis or treatment of a medical condition. Appellees argue that McGlothin's decision to unstrap Mr. Higginbotham to check his vital signs was a uniquely medical decision and thus was not protected by official immunity. In her testimony, McGlothin stated that normally a person being transported to a medical facility is secured to the stretcher with the use of two straps, one across the chest and one across the legs. To perform certain medical procedures, such as taking a person's blood pressure or starting an IV, however, the strap running across the person's chest has to be loosened or removed. This provides the EMT with the required access to the person's arm. We think that the decision to restrain or to remove the restraints from Mr. Higginbotham's chest was a decision related not to the proper course of medical treatment, rather it was a decision related to the proper method of transportation. Appellees' cite *Carrola* to support their argument that McGlothin's act of removing

the restraint was a medical decision and that McGlothin is not entitled to official immunity. *Carrola* can be distinguished from the instant case. In that case, the paramedics allegedly delayed the transport of a person in severe respiratory distress. They also refused to surrender authority to an on-site physician. *Carrola*, 935 S.W.2d at 950. The court of appeals in *Carrola* held that the paramedics had failed to establish as a matter of law that they were exercising governmental discretion. *Id.* at 953. We think that the conduct of the paramedics in *Carrola* were medical in nature in that the paramedics apparently determined who would treat the person in respiratory distress and how soon that person would be taken to a hospital. In this case, we find that McGlothin's decision to unstrap Mr. Higginbotham's chest was directly related to a determination of how to safely transport Mr. Higginbotham while still facilitating his receipt of medical care. This decision was derivative of her performance of a governmental function, the method of transit of a critically ill person to a medical facility. This is distinguishable from a situation where a paramedic makes a medical decision such as how soon a person needs to get to the hospital, what treatments a person should receive in transit, or who will perform the medical procedures. Reviewing the deposition testimony of McGlothin and the applicable law, we find that Appellants have established as a matter of law that McGlothin was exercising governmental discretion.

 Having found that both Wilson and McGlothin were performing discretionary functions, we now examine whether they have conclusively established that they performed their discretionary duties in good faith. To be entitled to summary judgment, a government official must prove that a reasonably prudent official, under the same or similar circumstances, might have believed that the action taken was justified in light of a clear risk of harm to the public. *See Chambers*, 883

S.W.2d at 656–57; *Beatty v. Charles*, 936 S.W.2d 28, 30 (Tex.App.—San Antonio 1996, no writ). The official does not need to prove either that it would have been unreasonable to take a different course of action or that all reasonably prudent officials would have acted as he did. *Chambers*, 883 S.W.2d at 657; *Beatty*, 936 S.W.2d at 30. Whether the official is negligent is not dispositive of the element of good faith. *Chambers*, 883 S.W.2d at 655–56; *Beatty*, 936 S.W.2d at 30. To controvert the official's summary judgment proof, the plaintiff must do more than show that a reasonably prudent official could have decided to take a different action. *Chambers*, 883 S.W.2d at 657; *Beatty*, 936 S.W.2d at 30. The plaintiff must produce evidence that no reasonable person in the official's position could have thought that the facts were such that they justified the official's acts. *Chambers*, 883 S.W.2d at 657; *Beatty*, 936 S.W.2d at 30.

 Appellants argue that the summary judgment conclusively establishes that Wilson acted in good faith. Wilson testified that he proceeded under the provisions of a "Code 3" emergency which required him to use his siren and emergency lights. He testified that he slowed down and did not enter the intersection of Transmountain Road and Gateway South until he determined that Smith would stop and that the intersection was clear. On the other hand, Elsa Powers and Peter Higginbotham testified that the ambulance ran a red light. Smith testified that he proceeded through the intersection under a green light. Smith also testified that he never heard the ambulance's siren and that, in his opinion, the ambulance did not have its siren on. Because this is a review from the denial of summary judgment, we have to accept the assertions of Elsa Powers, Peter Higginbotham, and Smith as true. *Nixon*, 690 S.W.2d at 548–49. Thus, for purposes of this appeal, we must determine whether Wilson acted in good faith when he proceeded through a controlled intersection under a red light with-

out engaging his emergency siren. Appellants have produced no evidence which supports the conclusion that a reasonably prudent EMT, under the same or similar circumstances as Wilson, might have believed that running a red light without engaging the emergency siren was justified in light of a clear risk of harm to the public. Accordingly, we hold that Appellants have failed to establish as a matter of law that Wilson performed his discretionary duties in good faith.

█ Appellants also assert that McGlothin discharged her discretionary duties in good faith. McGlothin testified that she loosened the strap to enable Martinez to check Hobart Higginbotham's blood pressure. She also testified that she allowed Mr. Higginbotham to remain on the floor of the ambulance for two or three minutes without administering any treatment or care. Appellants failed to offer evidence sufficient to conclusively establish that a reasonably prudent EMT, under the same or similar circumstances as McGlothin, might have believed that loosening the restraints was justified in light of a clear risk of harm to Hobart Higginbotham. Appellants also failed to offer evidence sufficient to conclusively establish that a reasonably prudent EMT, under the same or similar circumstances as McGlothin, might have believed that leaving Hobart Higginbotham unrestrained and on the floor of the ambulance for two or three minutes was justified in light of a clear risk of harm to Hobart Higginbotham. Accordingly, we are unable to conclude that McGlothin acted in good faith as a matter of law.

Because we find that Appellants failed to meet their burden of establishing that Wilson and McGlothin acted in good faith, we need not address whether Wilson and McGlothin acted within the scope of their authority. Wilson and McGlothin failed to establish all the elements of official immunity as a matter of law. Further, because the City of El Paso's claim of immunity is derivative of the qualified immunity claim of Wilson and McGlothin, we hold that the City of El Paso also failed to establish that it was entitled to sovereign immunity. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997); *Chambers*, 883 S.W.2d at 658. We overrule Appellants' sole issue on appeal.

Having overruled Appellants' sole issue on appeal, we affirm the order of the trial court denying summary judgment.