**Opinion issued December 4, 2014**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-14-00166-CV

—————————————

**GALVESTON COUNTY HEALTH DISTRICT, Appellant**

**V.**

**ERICA HANLEY, Appellee**

On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Case No. 12-CV-2314

## MEMORANDUM OPINION

This is an interlocutory appeal from the trial court's denial of the Galveston

County Health District's plea to the jurisdiction. Appellee Erica Hanley was

injured when the automobile she was driving collided with the District's

ambulance. The District argues that the trial court erred in denying the plea to the jurisdiction because it is immune from suit under both the "emergency exception" to the Tort Claims Act and the doctrine of official immunity. Because there is a question of fact related to the emergency exception, and the District failed to prove that official immunity applies, we affirm.

## Background

This case arises from an automobile accident. A Galveston County Health District ambulance responding to a call entered an intersection against a red light. Prior to entering the intersection, the ambulance driver's line of sight was obstructed by cars, a building, and bushes, and he could not see if there was oncoming traffic. According to the driver, he slowed from 30 miles per hour to less than 10 miles per hour and entered the intersection. Once in the intersection, the driver and his passenger spotted Hanley's car and swerved to avoid it, but the car hit the ambulance's right rear wheel well.

Hanley sued. She alleged that the ambulance ran a red light while speeding, without using lights or sirens. She contended that the ambulance was not in the process of responding to an emergency. She also alleged that the ambulance driver was negligent or, in the alternative, acting with conscious indifference or reckless disregard for the safety of others.

2

The District filed a plea to the jurisdiction and attached evidence showing that the ambulance was responding to an emergency call, used its emergency lights and siren, and did not speed through the intersection, but proceeded through slowly with regard for other motorists. Hanley responded with evidence that the ambulance entered the intersection against a red light despite the driver's knowledge of the limited visibility there. She also provided her own deposition testimony that although the emergency lights were on, she did not believe the siren was on, and she did not hear it or recall hearing it. She further testified to her belief that the ambulance did not stop or slow before entering the intersection.

The trial court denied the plea to the jurisdiction, and the District filed this interlocutory appeal.

**Analysis**

In two issues, the District argues that it is entitled to governmental immunity, both under the emergency exception to the Tort Claims Act and by virtue of the ambulance driver's official immunity.

A plea to the jurisdiction based on governmental immunity challenges a trial court's subject-matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). An appeal may be taken from an interlocutory order granting or denying a plea to the jurisdiction filed by a governmental unit. TEX. CIV. PRAC. & REM. CODE

3

§ 51.014(a)(8). We review de novo the trial court's ruling on a plea to the jurisdiction. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam).

The plaintiff must allege facts that affirmatively establish the trial court's subject matter jurisdiction. *Holland*, 221 S.W.3d at 642. In determining whether the plaintiff has satisfied this burden, we construe the pleadings liberally in the plaintiff's favor and deny the plea if facts affirmatively demonstrating jurisdiction have been alleged. *Id.* at 643; *Miranda*, 133 S.W.3d at 227; *Smith v. Galveston Cnty.*, 326 S.W.3d 695, 697–98 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

When a defendant challenges the existence of jurisdictional facts in a plea to the jurisdiction, the trial court must consider relevant evidence submitted by the parties. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009); *Miranda*, 133 S.W.3d at 227. Because the standard of review on appeal "generally mirrors that of a summary judgment," in reviewing the evidence presented, we take as true all evidence favorable to the nonmovant and indulge reasonable inferences and resolve doubts in her favor. *Miranda*, 133 S.W.3d at 228. When the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. If, however, the evidence creates a fact question regarding jurisdiction, then the trial

4

court must deny the plea, and the fact issue will be resolved by the factfinder. *Id* at 227–28.

## I.  Governmental immunity and the emergency exception

The doctrine of governmental immunity, like sovereign immunity from which it is derived, protects political subdivisions of the state from lawsuits unless the Legislature has specifically waived this immunity. *See City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). The Tort Claims Act, which provides a limited waiver of immunity, applies equally to the State and its political subdivisions. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *see* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. Section 101.021 of the Act provides:

> A governmental unit in the state is liable for:
>
> (1)  property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A)  the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B)  the employee would be personally liable to the claimant according to Texas law; and
>
> (2)  personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

5

TEX. CIV. PRAC. & REM. CODE § 101.021. However, the Act also provides for exceptions to the waiver of immunity. *See id.* §§ 101.051–.067. For example, the "emergency exception" provides that immunity is not waived when the employee's act was in response to an emergency call and in compliance with law or—in the absence of applicable laws—not done with "conscious indifference or reckless disregard for the safety of others." *Id.* § 101.055(2); *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006).

As relevant to this case, the "emergency exception" to the waiver of immunity requires proof that the employee's act was in response to an emergency call and in compliance with relevant law. *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2); *Hartman*, 201 S.W.3d at 671–72. Hanley's petition alleged that the ambulance was not responding to an emergency, was not using its emergency lights or siren, entered an intersection against a red light in violation of law, and that the ambulance driver failed to comply with several provisions of the Transportation Code. Based on these factors, she argues on appeal, as she did in the trial court, that the ambulance driver acted recklessly and with conscious disregard for the safety of others in violation of the Texas Transportation Code. She therefore argues that the emergency exception does not apply in this case.

In its plea to the jurisdiction, the District argued that the ambulance was responding to an emergency and was authorized by statute to proceed into the

6

intersection against a red light. It also argued that the Transportation Code authorized the ambulance driver to enter the intersection against the red light after slowing as needed for safe operation, and that, as a matter of law, Hanley could not establish that the ambulance driver was reckless. The District attached the following evidence to its plea: (1) the affidavit of Amy Weber, who supervised the ambulance driver; (2) the affidavit of Tyler Stenzel, who was the passenger in ambulance at the time of the accident; (3) the deposition and affidavit of Nathan Kohn, the ambulance driver; and (4) the affidavit of Herbert George Frankovich, the EMS Director for the District.

As to the first prong of the emergency exception—that the employee's action was in response to an emergency call—Weber, Stenzel, Kohn, and Frankovich all testified or averred that the ambulance was responding to an emergency call for help pertaining to an unconscious and nonresponsive woman. Hanley offered no evidence to controvert the proof that the ambulance was responding to an emergency call. Therefore, the evidence is conclusive that the ambulance was responding to an emergency call. *See, e.g.*, *Hartman*, 201 S.W.3d at 672.

However, the applicability of the emergency exception requires more than a mere showing that the governmental employee was responding to an emergency call. For the "emergency exception" to apply, there must be proof that the

7

employee's action in responding to an emergency call was "in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance . . . the action [was] not taken with conscious indifference or reckless disregard for the safety of others." TEX. CIV. PRAC. & REM. CODE § 101.055(2).

Several provisions of Chapter 546 of the Texas Transportation Code inform our analysis. Sections 546.001 and 546.002 provide that when the driver of an authorized emergency vehicle is responding to an emergency call, he may take certain actions that would otherwise violate the law, including proceeding "past a red or stop signal . . . after slowing as necessary for safe operation," and exceeding "a maximum speed limit . . . as long as the operator does not endanger life or property." TEX. TRANSP. CODE §§ 546.001, 546.002. However, section 546.003 provides that when engaging in such conduct, the operator of the authorized emergency vehicle "shall use, at the discretion of the operator *in accordance with policies of the department* or the local government *that employs the operator*, audible or visual signals that meet the pertinent requirements of Sections 547.305 and 547.702." *Id.* § 546.003 (emphasis supplied). Pertinent to this case, section 547.702 requires "the operator of an authorized emergency vehicle" to use "the siren, whistle, or bell when necessary to warn other vehicle operators or pedestrians of the approach of the emergency vehicle." *Id.* § 547.702.

8

The District argues that because section 546.003 requires the use of "audible or visual signals" "at the discretion of the operator," it does not require that both audible and visual signals be used. *See id.* § 546.003. But section 546.003 also incorporates a requirement that the operator act "in accordance with policies of the department or the local government that employs" him. *See id.* The District's evidence included an affidavit from its EMS Director Trey Frankovich. He stated that several pages of the District's Emergency Medical Services manual were attached to the affidavit. Those pages do not appear in the appellate record, but Frankovich's affidavit itself provides some evidence about the Department's policies regarding the use of lights and sirens. Frankovich averred:

> Page 19 of the Manual (Exhibit "B") addresses the District's code system. Galveston EMS does not use "10 codes." Under the District's code system Code 1 is no lights or siren. Both District Codes 2 and Code 3 use lights *and* siren. Code 3 is used when CPR is in progress. However, responses, speed, and driving practices are no different under Codes 2 and 3.
>
> . . . .
>
> By Dispatch policies, lights *and* sirens were authorized here.

(Emphasis supplied.)

Frankovich's affidavit states that Codes 2 and 3 use both lights and siren. Although he does not state that lights and siren were both required here, his description of the practices for Codes 2 and 3 and his statement that lights and sirens were authorized gives rise to a reasonable inference that the District's

9

policies required both lights and sirens. The District's arguments on appeal and in the plea to the jurisdiction take as true that the siren was used at the time of the accident, and this proposition finds ample support in the District's evidence.

But in this procedural setting we are required to take as true all evidence favorable to Hanley and indulge reasonable inferences in her favor. *See Miranda*, 133 S.W.3d at 228. Hanley contends that her deposition testimony refuted the District's evidence regarding the use of a siren and created a question of fact. She testified that she did "not remember hearing a siren" and that she "believe[d] the sirens were not on." When the District's counsel attempted to clarify her testimony, she said that she did not hear a siren:

> Q.   Okay. So what you're saying is the ambulance did not have its sirens on?
>
> A.   I do not remember hearing a siren.
>
> Q.   Well, that's different than saying it didn't have it on. Are you saying you don't recall having heard it or are you saying you don't recall it having it on, period?
>
> [Hanley's attorney]:   Objection, form.
>
> A.   I cannot say for certain, because I did not drive the ambulance. But I did not hear sirens.

The parties dispute whether this testimony was sufficient to raise a question of fact.

In *Rankin v. Union Pacific Railroad Co.*, 319 S.W.3d 58 (Tex. App.—San Antonio 2010, no pet.), a surviving husband sued a railroad after his wife died

from injuries sustained when a train hit her truck at a railroad crossing. 319 S.W.3d at 61. Among other things, he alleged that the railroad failed to provide an audible warning of the approaching train. *Id.* In response to a no-evidence motion for summary judgment on this issue, he provided an affidavit from a witness who averred, "I do not remember hearing the train blow its horn before it hit the truck." *Id.* at 65. The court of appeals held that this testimony was no evidence of failure to warn because the "fact that a witness does not remember hearing the whistle or horn sounding is not probative evidence of any failure to sound the train's whistle or horn." *Id.* Rather, the San Antonio court stated that to be probative there must be some evidence that a witness "was in a position to hear the audible engine signals, or that he would have heard the whistle or horn if it had been sounded, or that the whistle or horn was not sounded." *Id.*

Such was the situation in *Green v. Alford*, 274 S.W.3d 5 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd), an appeal after a jury trial in which the question was whether the driver of a fire engine was entitled to official immunity in a suit arising from an automobile collision. In *Green*, the firefighter-driver argued that the evidence was insufficient to show that he behaved recklessly by failing to use a siren. *Id.* at 27–28. Several witnesses had testified that the sirens were on, and five witnesses had testified that they did not hear a siren. *Id.* The

court of appeals concluded that the evidence that the witnesses did not hear the siren was "some evidence that there was no siren to be heard." *Id.* at 28.

In this case, Hanley testified that she "believed" the sirens were not on, that she "did not remember hearing a siren," and that she "did not hear a siren." Standing alone, her subjective belief and failure to recall hearing a siren would not raise a genuine issue of fact on this matter. *Texas Div.-Tranter, Inc. v. Carroza*, 876 S.W.2d 312, 314 (Tex. 1994); *Rankin*, 319 S.W.3d at 65. But because we must resolve doubts in Hanley's favor, *see Miranda*, 133 S.W.3d at 228, we conclude that her affirmative statement that she "did not hear sirens" was some evidence that there was no siren to be heard. *See Green*, 274 S.W.3d at 28; *cf. Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988) ("if conflicting inferences may be drawn from a deposition and from an affidavit filed by the same party in opposition to a motion for summary judgment, a fact issue is presented").

The District also argues that it retained governmental immunity under the emergency exception because its driver's actions were not taken with conscious indifference or reckless disregard for the safety of others. Section 101.055 provides that "in the absence of" a governing law or ordinance, immunity is not waived "if the governmental employee's action is not taken with conscious indifference or reckless disregard for the safety of others." TEX. CIV. PRAC. & REM. CODE § 101.055(2). Because the "conscious indifference and reckless disregard"

12

provision applies only in the absence of governing laws and because we have identified laws applicable to the situation presented by this appeal, we do not consider whether Kohn was acting with conscious indifference or reckless disregard. *See id.*

Together with the inference that the District's policy required the use of both lights and siren, the evidence presents a question of fact as to whether Kohn's actions complied with the laws and ordinances applicable to emergency action. *See id.* Because the evidence presented a question of fact regarding jurisdiction, the trial court was required to deny the plea to the extent it was based on the emergency exception. *See Miranda*, 133 S.W.3d at 227–28. We hold that the trial court properly denied the District's plea to the jurisdiction on the grounds of the emergency exception.

## II. Official immunity

The District also argues that the trial court erred by denying its plea to the jurisdiction because the doctrine of official immunity applies to the ambulance driver. When a governmental unit's liability is based on respondeat superior and the employee would be entitled to official immunity, the doctrine of official immunity operates as an exception to the Tort Claims Act's waiver of immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.021; *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653–54 (Tex. 1995).

Hanley argues, in part, that this issue is waived because the District raises arguments on appeal that were not presented to the trial court in support of its plea to the jurisdiction. However, the Supreme Court has held that immunity from suit implicates subject-matter jurisdiction and may be raised for the first time on appeal. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). In addition, the District's second amended plea to the jurisdiction did argue that immunity was retained under the doctrine of official immunity. Therefore, we consider the merits of the District's official immunity argument. *See id.*

"Official immunity is based on sound public policy that encourages public officers to perform their discretionary duties without fear of personal liability for negligent or improper performance." *Ramos v. Tex. Dep't of Pub. Safety*, 35 S.W.3d 723, 726 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). "If the employee is protected from liability by official immunity, the employee is not personally liable to the claimant . . . ." *DeWitt*, 904 S.W.2d at 653. Under the Tort Claims Act, a governmental unit may only be liable to a claimant when "the [negligent] employee would be personally liable to the claimant." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(B). Therefore when an employee is entitled to official immunity, the government retains its sovereign immunity as well. *See DeWitt*, 904 S.W.2d at 653.

"A governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith." *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). Official immunity is an affirmative defense. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465 (Tex. 1997); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Therefore, the defendant bears the burden of establishing all the elements of official immunity. *Chambers*, 883 S.W.2d at 653. If it does, then the burden shifts to the plaintiff to rebut the evidence with proof of the defendant's bad faith. *Tex. Dep't of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 488–89 (Tex. App.—Houston [1st Dist.] 2011, no pet.). But if "the government official does not prove each element of official immunity, the burden never shifts to the plaintiff to come forward with controverting evidence." *Id.*

The first prong asks whether the employee was performing discretionary duties. *See Clark*, 38 S.W.3d at 580. "Actions that involve personal deliberation, decision, and judgment are discretionary; actions that require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial." *Junemann v. Harris Cnty.*, 84 S.W.3d 689, 693 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (citing *Chambers*, 883 S.W.2d at 653). Operation of an ambulance in response to an emergency situation has been held to be a

15

discretionary function as a matter of law. *See City of Houston v. Flaniken*, 108 S.W.3d 555, 557 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Rivas v. City of Houston*, 17 S.W.3d 23, 29 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Similarly, this court has held that a police officer was performing a discretionary act when driving a patrol car and responding to an emergency situation because he "relied on his professional experience and expertise in judging the traffic, weather conditions, and alternative routes to determine the safest and most expedient way to reach his destination." *City of Houston v. Hatton*, No. 01-11-01068-CV, 2012 WL 3528003, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, pet. denied) (mem. op.).

The second prong asks whether the employee's actions were within the scope of his authority. *See Clark*, 38 S.W.3d at 580. "An official acts within the scope of his authority if he is discharging the duties generally assigned to him." *Junemann*, 84 S.W.3d at 693. In his affidavit, Kohn averred that he was trained in both emergency medical service and in the operation of an emergency vehicle. He stated that he and his passenger were dispatched in response to a call about an unconscious and nonresponsive woman and that he drove the ambulance. This evidence was not controverted by Hanley and is conclusive proof that Kohn was acting within the scope of his authority. In addition, in our discussion of the emergency exception, we explained that the evidence was conclusive that Kohn

16

was responding to an emergency call at the time of the accident. Because Kohn was operating an ambulance in response to an emergency situation, we conclude that he was engaging in a discretionary function. *See Hatton*, 2012 WL 3528003, at *3; *Flaniken*, 108 S.W.3d at 557; *Rivas*, 17 S.W.3d at 29. We hold that the first two prongs of the test for official immunity are satisfied.

The third prong of the official immunity test asks whether the employee was acting in good faith. *See Clark*, 38 S.W.3d at 580. "The final prong of official immunity requires the government official to demonstrate that his acts were within the realm of what a reasonably prudent government official could have believed was appropriate at the time in question." *Junemann*, 84 S.W.3d at 693; *accord Rodriguez*, 344 S.W.3d at 491. "The standard of good faith as an element of official immunity is not a test of carelessness or negligence, or a measure of an official's motivation." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 426 (Tex. 2004) (citing *Wadewitz*, 951 S.W.2d at 467 n.1). This test of good faith does not inquire into "what a reasonable person *would have done*," but into "what a reasonable [person] *could have believed*." *Id.*

Good faith balances the *need* to which the governmental employee was responding with the *risks* of his course of action, based on his perception of the facts at the time of the event. *See Wadewitz*, 951 S.W.2d at 467; *Hatton*, 2012 WL 3528003, at *4. In assessing the need prong of this balancing test, we consider the

seriousness of the accident to which the employee was responding, whether his immediate presence was necessary to prevent injury or loss of life, and what alternative courses of action, if any, were available to achieve a comparable result. *See Wadewitz*, 951 S.W.2d at 467. In assessing the risk prong of this balancing test, we consider the nature and severity of harm that the employee's actions could cause (including possible harm to bystanders and the possibility that an accident would prevent the employee from reaching the scene of the accident), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent employee. *Id.*

The evidence conclusively established that the ambulance was responding to an emergency situation. The District's evidence shows that the employees were responding to a serious need and their presence was immediately necessary. With respect to risks, in his affidavit Kohn expressly stated that he "proceeded in good faith, attempting . . . to give due regard to safety [while] . . . weighing the risks of any extra speed or of going through traffic control devices against undue delay in getting to . . . the woman we were dispatched to help." He specifically acknowledged the potential risk that involvement in an accident could delay getting care to the unconscious woman. He averred, "I was aware of the danger in entering an intersection against a light, and attempted to make sure the intersection was clear as the ambulance began to enter the intersection." He said that he saw no

18

cars approaching on the cross-street until he entered the intersection. He also stated that Hanley's car did not appear to be stopping or slowing "despite the operating overhead lights and siren."

Like Kohn's affidavit, other evidence provided by the District presumed the use of both overhead lights and siren. For example, in his affidavit, EMS Director Frankovich averred:

> There is an added danger in going through an intersection against a red light. The emergency lights and siren of the ambulance, and the obligation of other drivers to yield to an emergency vehicle, are tools available to the ambulance driver.
>
> . . . .
>
> There is nothing reflected in [the attached exhibits] suggesting that Nathan Kohn acted with conscious indifference or reckless disregard of the safety of others at the time of the accident in question. . . .
>
> The lights and siren appear to have been used as required. These efforts are consistent with due regard for the safety of others.

Under the District's version of the facts—including the use of the emergency siren—the risk of harm to the public may have been justified by the need to respond to the emergency. But as we have explained, because our standard of review requires us to take as true all evidence favorable to Hanley and indulge reasonable inferences in her favor, for the purposes of the good-faith element of the official immunity test, we cannot presume that the siren was engaged at the time of the accident. *See Rodriguez*, 344 S.W.3d at 497. Instead we must take as

19

true Hanley's statement that she "did not hear sirens" and the resulting reasonable inference that there was no siren to be heard. Rather than determine whether a reasonably prudent ambulance driver could have believed that it was appropriate for an ambulance responding to an emergency to enter an intersection against a red light while using lights and a siren, we must determine whether a reasonably prudent ambulance driver could have believed that it was appropriate to do so when his visibility at the intersection was indisputably obstructed and the siren was not engaged.

A similar situation was presented in *City of El Paso v. Higginbotham*, 993 S.W.2d 819 (Tex. App.—El Paso 1999, no pet.), an appeal from the trial court's denial of summary judgment on the issue of immunity. While transporting Hobart Higginbotham to a hospital, an ambulance collided with another vehicle in an intersection. *Higginbotham*, 993 S.W.2d at 821. Higginbotham, his relatives (who had followed the ambulance in personal vehicles), and the man whose vehicle collided with the ambulance all brought suit for injuries associated with the accident. *Id.* at 821–22. In examining the good-faith prong of the official immunity test, the court of appeals explained that the summary-judgment evidence presented a question of fact as to whether the light was red or green and whether the ambulance had its siren on at the time of the collision. *Id.* at 825. Because the appeal was "a review from the denial of summary judgment," the court of appeals

20

considered as true the factual assertions that favored the nonmovant. *Id.* at 825. The court of appeals held that that the appellants "produced no evidence which supports the conclusion that a reasonably prudent EMT . . . might have believed that running a red light without engaging the emergency siren was justified in light of a clear risk of harm to the public." *Id.* at 826.

As in *Higginbotham*, the District produced no evidence in this case which supports the conclusion that a reasonably prudent ambulance driver could have believed that entering an intersection against a red light with limited visibility as to the cross-street and without engaging the emergency siren was justified in light of clear risk of harm to the public. As such, we conclude that the District did not prove the third element of official immunity. *See Clark*, 38 S.W.3d at 580. Therefore, the burden never shifted to Hanley to come forward with controverting evidence to rebut the driver's good faith. *See Rodriguez*, 344 S.W.3d at 488–89. Accordingly, we hold that the trial court did not err by denying the plea to the jurisdiction as to the District's claim of official immunity.

## Conclusion

We overrule both of the District's issues, and we affirm the order of the trial court.

Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.